DISTRICT OF COLUMBIA, Appellant

v.

Joseph E. TINKER, Appellee.

No. 93–CV–1020.

District of Columbia Court of Appeals.

Argued Jan. 18, 1995.

Decided March 13, 1997.

James C. McKay, Jr., Assistant Corporation Counsel, with whom Vanessa Ruiz, Corporation Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for appellant.

Samuel M. Shapiro, with whom David C. Merkin, Rockville, MD, was on the brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge:

Appellee Tinker sued the District of Columbia for injuries allegedly suffered in the course of an arrest. A jury awarded him $500,000 in damages. During the pre-trial phase of the case, the trial court denied the District of Columbia's motion for leave to amend its answer by asserting the statute of limitations as a defense, and denied the District's motion for summary judgment based on the statute of limitations. On appeal from the final judgment, the District contends that these pre-trial rulings were erroneous. We agree, reverse the judgment, and remand for further proceedings as outlined in part IV of this opinion.

I

A. *Facts underlying Tinker's claim*

The following statement of facts is based on the testimony at trial, viewed in the light most favorable to Tinker. It appears from the verdict that the jury substantially accepted Tinker's version of what happened.

On the evening of September 10, 1988, Joseph Tinker, an automobile mechanic, was walking from his home on Yuma Street, S.E., toward Ninth Street, on his way to a convenience store. He had left his house without a wallet or any identification. In his back pocket Tinker was carrying a knife with a four-inch blade which he used for stripping

wires in the course of his work. While walking along Yuma Street, Tinker stopped and picked up a plastic toy gun which was lying on the ground.

After crossing Ninth Street, Tinker heard the sound of people running and brakes squealing, and then he heard someone order him to halt. Turning around, he was hit and knocked down by a Metropolitan Police officer. As he lay on the ground, the officer threatened him with his service pistol and hit him with his nightstick. The officer then pulled Tinker to his feet and began to search him. Upon discovering the knife in his back pocket, the officer again shoved Tinker to the ground, handcuffed him, pulled him once again to his feet, and placed him under arrest. In the course of these events, Tinker's right shoulder and wrist were seriously injured.

Once in custody, Tinker was taken to the Seventh District police station. While being processed there, he complained of his injuries and was taken to District of Columbia General Hospital, where he later underwent extensive surgery on his right shoulder. He stayed in the hospital, and then in the infirmary at the jail, for about a month.

### B. *Facts relevant to the statute of limitations issue*

Upon his release from the hospital, Tinker was charged with possession of a prohibited weapon, namely, the knife that he had been carrying in his pocket. He pleaded guilty to this charge on December 6, 1988, and at a later date he was sentenced to serve nine months in prison.[1]

For reasons not entirely clear from the record, Tinker was mistakenly released from Lorton Reformatory on August 11, 1989. Soon thereafter, however, the District of Columbia Board of Parole issued a warrant for his arrest, stating that he was on parole from an earlier sentence for robbery and that the

Board had information that he was in violation of his parole. He was re-arrested on September 15, 1989, and returned to Lorton to complete the remainder of his robbery sentence. On July 14, 1990, Tinker was transferred to a halfway house, and on September 28, 1990, he was again released on parole.

On July 19, 1991, Tinker filed a three-count civil action against the District of Columbia, seeking redress for the injuries he had allegedly suffered as a result of his arrest on September 10, 1988.[2] On August 23 the District filed its answer denying the substantive allegations in the complaint. Five months later, on January 24, 1992, the parties filed a stipulation stating that "the issue of excessive force is one within the ken of the jury and will not be presented through expert testimony by either the plaintiff or the defendant."

On April 13, 1992, the District filed a motion for leave to amend its answer by adding a claim that the assault count was barred by the statute of limitations. In a memorandum filed in support of this motion, the District stated (1) that the initial omission of the statute of limitations defense in its answer was inadvertent, (2) that relevant case law "provides that leave to amend shall be freely given," and (3) that Tinker would suffer "no prejudice attributable to the timing of the request for amendment." A few weeks later, on May 27, the District filed a motion for summary judgment on the assault claim, arguing that it was barred by the statute of limitations. Tinker opposed both motions, and the court denied them both in a nine-page order.

Some time later the case was tried before a jury, which awarded Tinker $500,000 in damages. The District moved for a judgment notwithstanding the verdict, which the court denied. This appeal followed.

---

1. The date of Tinker's sentencing is not disclosed by the record.

2. The first count of Tinker's complaint alleged negligence by the police in effecting his arrest and by other District of Columbia personnel in hiring, training, and supervising the arresting officers. The second count alleged "assault and battery—excessive force" by the police in the course of the arrest. The third count alleged medical malpractice by District employees while Tinker was at D.C. General Hospital and later in the D.C. Jail and at Lorton Reformatory. By the time the case went to trial, the first and third counts had been dismissed; only the assault and battery count remained in the case.

## II

In denying the District's motion for leave to amend its answer by adding a statute of limitations defense, the trial court gave three reasons. First, the court ruled that because discovery had already been completed, Tinker would be substantially prejudiced if the District were allowed to amend its answer. Second, the court concluded that the District's delay of approximately eight months in asserting this defense was "inexcusable," since the District was experienced in trying many cases of a similar nature, and the availability of a statute of limitations defense should have been recognized much earlier. Third, the court held that the District had "impliedly waived this defense [by taking] the affirmative step of joining with the plaintiff in filing a stipulation" that expert witnesses need not be called to testify on the issue of excessive force. Because the stipulation "speaks directly to how the parties will proceed on this count in the complaint," the court said, "the District surely was on notice of the details of the allegation" and should have "realized the time sequence of all events involving the assault and the filing of this lawsuit." On appeal the District contends that the trial court's denial of its motion was an abuse of discretion.

■ Super.Ct.Civ.R. 8(c) states that the statute of limitations is a defense which must be raised affirmatively by a defendant in a responsive pleading. If not pleaded promptly, this defense may be deemed waived by the trial court. *Whitener v. Washington Metropolitan Area Transit Authority*, 505 A.2d 457, 458 (D.C.1986). On the other hand, Rule 8(f) mandates that pleadings be construed so as to do "substantial justice," and has been consistently interpreted to reflect "a preference for resolution of disputes on the merits, not on technicalities of pleading." *Id.* (citation omitted). Additionally, Rule 8 must be read in light of Rule 15(a), which provides that parties may amend their pleadings with leave of court after a responsive pleading is filed, and that such leave "shall be freely given when justice so requires."

■ When reviewing a trial court order denying a party leave to amend a pleading, this court must determine whether that denial was an abuse of discretion. In *Eagle Wine & Liquor Co. v. Silverberg Electric Co.*, 402 A.2d 31 (D.C.1979), we said that although motions for leave to amend are not to be granted automatically, "[t]he discretion accorded the trial court in deciding a motion for leave to amend is to be considered together with the prevailing spirit of liberalism in allowing such amendments when justice will be so served." *Id.* at 34 (citations omitted).

Guided by these general principles, we consider the trial court's ruling on the District's motion to amend its answer.

In January 1992 both parties filed with the trial court a written stipulation which said:

It is stipulated and agreed that at the trial of the above captioned case the issue of excessive force is one within the ken of the jury and will not be presented through expert testimony by either the plaintiff or the defendant. The lack of such expert testimony at trial will result in no grounds for a directed verdict being requested or granted by either the plaintiff or the defendant on that issue.

Almost three months later, the District filed the motion for leave to amend its answer by adding a statute of limitations defense. In its subsequent order, the trial court held that, by agreeing to the stipulation, the District had addressed the merits of the case to such an extent that there was "utterly no way" for the District to account for its failure to realize that a statute of limitations defense might be available. Calling this "a major lapse on the part of the District," the court found the lapse "inexcusable" and denied the motion.

■ The court's reliance on the parties' stipulation as a basis for its ruling was, in our view, an abuse of the discretion vested in it by Rule 15(a). This court has held that unless there is prejudice to the opposing party, the rules of procedure cannot bar a defendant from raising the defense of the statute of limitations even after the filing of its answer. *Whitener v. WMATA, supra*, 505 A.2d at 460. In the present case, therefore, the trial court could not properly deny

the District's motion simply because the parties had entered into a stipulation about expert testimony. There was nothing in the stipulation to suggest that the District had waived its right to raise the affirmative defense of the statute of limitations. Thus it was incumbent on Tinker to make a showing of prejudice resulting from the District's failure to raise the defense earlier; without such a showing, the motion for leave to amend should have been granted.

■ The trial court stated in its order that one significant reason for denying the District's motion was that "the length of delay [in asserting the statute of limitations] is truly inexcusable, particularly since the District of Columbia is accustomed to defending large numbers of similar cases, filed by persons who are imprisoned for several years and who frequently do not pursue their cases while incarcerated." But whether the delay was excusable or inexcusable is really beside the point; the only issue here is whether the delay resulted in prejudice to the opposing party. "[D]elay—even lengthy delay—by itself will not usually provide sufficient ground for refusal to allow an amendment.... Refusals to grant amendments on the grounds of 'lateness' or 'delay' alone properly may be reversed." *Eagle Wine & Liquor, supra,* 402 A.2d at 35 (citation omitted). Thus the trial court's reliance on the District's delay would be warranted only if that delay had caused substantial prejudice to Tinker. We conclude that it did not.

■ The trial court reasoned that Tinker would suffer substantial prejudice if the District were allowed to amend its answer because "[a]ll parties have gone through the entire discovery period. Time and expense [have] been committed by plaintiff." The court's inquiry should have been more narrowly focused. In *Whitener,* for example, we considered such factors as whether the statute of limitations defense "was readily apparent from the face of the complaint," whether the plaintiffs had elected to "forego any other avenue of relief in reliance on [the defendant's] failure to plead the statute," and

whether the plaintiffs had incurred (or would incur) any undue litigation expense as a result of the defendant's failure to plead the statute of limitations earlier. *See* 505 A.2d at 460. Had the court done so here, it could not have found prejudice substantial enough to justify denial of the District's motion to amend.

The defense of the statute of limitations was readily apparent from the face of Tinker's complaint, which stated that the alleged assault—an intentional tort with a one-year statute of limitations—occurred on September 10, 1988, almost three years before he filed suit. Thus Tinker must have known from the start that he was proceeding, at least on the assault count, in the face of a known procedural peril, and the District's lateness in bringing the matter up did not change that fact. Tinker effectively conceded this point in his opposition to the District's motion for summary judgment:

> Certainly, from the plaintiff's complaint it was patently obvious that more than one year had expired from the assault and battery committed upon him on September 10, 1988, and the filing of his civil action on June 19, 1991.

Thus we agree with the comment in the District's brief that Tinker "cannot claim that he was unfairly surprised by the District's assertion of the defense." [3]

■ At the heart of Tinker's case is the assertion that he would have suffered substantial prejudice if the motion had been granted because he withdrew his claims of negligent hiring, training, and supervision, as alleged in Count I of the complaint, "because of the defendant's stipulation to the lay issue of excessive force." In other words, Tinker is saying that because of the stipulation, he dropped what would have been the only remaining viable claim in his case, namely, his claim of negligence against the District. As the District points out, however, the first and third counts of the complaint were not withdrawn by Tinker until several months *after* the trial court denied the District's motion to

---

**3.** Whether there would have been additional expense to Tinker if the District's motion to amend were granted is an issue which the parties appar-

ently did not address. Tinker makes no claim on appeal that he would have been prejudiced by having to incur further litigation expenses.

amend, and even longer after the stipulation about expert testimony. This sequence of events fatally undermines Tinker's only colorable claim of significant prejudice.

The fact that the parties entered into the stipulation about excessive force—which was alleged only in the second count of the complaint, the one which ultimately went to trial [4]—in no way prevented Tinker from investigating, developing, and ultimately litigating the merits of the two additional counts alleging negligence and medical malpractice on the part of District personnel. While it is understandable that Tinker (or any plaintiff) might prefer to litigate a simple and inexpensive theory of liability rather than a more complicated and costly one, that choice inhered in the case as it was pled in the complaint. It was not created by the District's entering into a reasonable stipulation about expert testimony, nor was it the result of the District's tardiness in seeking to plead the statute of limitations. When Tinker decided not to go forward on the first and third counts of his complaint after the stipulation was agreed upon, he did so with full knowledge of the District's effort to assert the statute of limitations on the intentional tort claim. In any event, the disposition that we order in part IV, *infra,* affords him adequate relief from any arguable prejudice.

We therefore hold that the trial court abused its discretion in denying the District's motion to amend its answer.

### III

The trial court also ruled in the alternative that the District's motion for summary judgment, based on the statute of limitations, must be denied on the merits. D.C.Code § 12–302(a) (1995) provides, in part, that if "a person entitled to maintain an action" is imprisoned at the time the right of action accrues, he or she "may bring action within the time limited after the disability is removed"—*i.e.,* after being released from imprisonment. In this case, however, the court ruled that because Tinker had been tempo-

rarily released from prison in error, that "brief break" in his incarceration was "legally invalid [and] should be regarded as a nullity for all . . . legal purposes." The court therefore held that his erroneous release in August 1989 did not cause the statute to start running, and that under D.C.Code § 12–302(a) the statute was tolled until his final, lawful release in September 1990—less than a year before he filed his complaint. We hold that this ruling was error and that the statute began to run irrevocably when Tinker was initially released in August 1989.

Before considering the merits, we must address a procedural point. Citing *Morgan v. American University,* 534 A.2d 323, 325–329 (D.C.1987), Tinker argues that the trial court's denial of the District's motion for summary judgment may not be reviewed on appeal from the final judgment entered after a full trial on the merits. *Morgan* does so hold, as a general rule, but *Morgan* also recognizes that "any *legal* rulings made by the trial court at summary judgment affecting [the] final judgment can be reviewed" on appeal after an adverse jury verdict. 534 A.2d at 327 (citation and internal punctuation omitted; emphasis added). This principle is applicable here, for the legal issue involving the statute of limitations was in no sense subsumed within the factual issues presented to the jury. In addition, we note that during the trial, at the close of the plaintiff's case, the District made a motion for directed verdict, "the first ground" of which was a renewal of its earlier motion for summary judgment. Although the discussion thereafter focused mainly on the stipulation and whether the District had complied with it, we are satisfied that the renewal of the earlier motion by way of a motion for directed verdict was sufficient to preserve the issue for appellate review, as *Morgan* itself teaches. *See id.* at 327 (denial of motion for directed verdict, incorporating grounds of earlier motion, is "of course appealable after an adverse jury verdict" (citation omitted)). We therefore hold that the

---

**4.** The third count, alleging "negligence—medical malpractice" by personnel at the D.C. Jail and D.C. General Hospital, incorporates by reference "each and every allegation" in the first two

counts. There is, however, nothing in the third count purporting to base Tinker's malpractice claim on excessive force by the arresting officer.

denial of the District's earlier motion "is properly before us pursuant to the general rule that appeal from a final judgment calls into question all of the interlocutory rulings leading up to it." *Bulin v. Stein,* 668 A.2d 810, 813 n. 6 (D.C.1995) (citation omitted).

In any event, we have already held that the trial court abused its discretion in denying the District's motion for leave to amend its complaint. The necessary result of that holding is that the judgment must be reversed and the case remanded with directions to allow the amendment. Once the complaint is amended, the District would be entitled to renew its motion for summary judgment based on the statute of limitations, and that motion, for the reasons we shall now explain, would have to be granted.

### A. *The applicable statute of limitations*

■ Preliminarily, we must decide whether Tinker's assault claim is subject to a one-year or a three-year statute of limitations. D.C.Code § 12–301(4) sets a one-year limit on the time within which a plaintiff may file a civil action for assault and battery. D.C.Code § 12–301(8), on the other hand, states that the time for filing suit based on a cause of action "for which a limitation is not otherwise specifically prescribed," which includes most negligence claims, "is three years." If the three-year statute applies here, the District cannot prevail, for it is undisputed that Tinker's complaint was filed less than three years after the date of his injury.

Tinker, citing our decision in *Etheredge v. District of Columbia,* 635 A.2d 908 (D.C. 1993), contends that he presented a claim of "assault and battery—excessive force" which contained within it elements of both negligence and assault. As a result, he maintains, this particular claim was subject to the three-

year statute of limitations, D.C.Code § 12–301(8). *Etheredge,* in our view, does not support Tinker's argument.[5] The dispositive case here is not *Etheredge* but *Maddox v. Bano,* 422 A.2d 763 (D.C.1980).

In *Maddox,* as in the case at bar, the plaintiff alleged both assault and battery and negligence by police officers in effecting an arrest. The one-year statute of limitations for assault and battery had run before the complaint was filed, but the three-year statute for negligence had not. We affirmed a summary judgment in favor of the District, holding that a claim alleging excessive force involved only assault and battery, not negligence:

> Appellant's complaint described an injury received as a consequence of excessive force alleged to have been exercised by the arresting officers. There is no dispute that the physical contact was intentional, and such intentional contact constitutes battery.... The only tortious conduct clearly pled is assault and battery. The terms "carelessly and negligently" are conclusory assertions, and without more the complaint does not raise a cognizable claim of negligence.... Moreover, the trial court was not bound by plaintiff's characterization of the action.

*Id.* at 764–765 (citations omitted).

In the present case, as in *Maddox,* the gravamen of the second count of Tinker's complaint was that the conduct of the arresting police officer on September 10, 1988, amounted to assault and battery. Throughout the trial, the testimony of the witnesses concerned only whether Tinker had suffered any injuries that were deliberately inflicted by that officer. At no time did Tinker even attempt to prove negligence on the part of

---

5. The plaintiff in *Etheredge* had been shot and seriously injured by a police officer in the course of an arrest. Like Tinker, he sued the District alleging both (1) negligence and (2) assault and battery. In discussing *Etheredge's* negligence claim, we said:

> The claims of negligence and of assault and battery, while not identical in the present context, are nevertheless related. The question with respect to the assault and battery claim is whether Officer Paige initially shot Etheredge

without legal justification.... The negligence claim hinges on whether Paige (when he shot Etheredge) failed to act as a reasonably prudent officer would have acted.

635 A.2d at 918 (citations omitted). We held that the evidence was sufficient to go to the jury on both counts, but we made clear that the two claims were separate and distinct, even though "related," and that the two counts were supported by different evidence.

any police officer or other District employee.[6] Moreover, our cases make clear that "excessive force" is a term of art denoting an act of assault or battery by law enforcement officials committed in the course of their duties. *E.g., Allison v. United States,* 623 A.2d 590, 594 (D.C.1993); *Jackson v. District of Columbia,* 412 A.2d 948, 956 (D.C.1980). Nothing in the case law even hints at an element of negligence, or a tort distinct from assault and battery.

Thus we conclude that the only tortious conduct alleged in the second count of the complaint and proved by Tinker at trial was assault and battery on the part of the police. It follows that his claim was subject to the one-year statute of limitations, D.C.Code § 12–301(4).

### B. *Was the statute tolled?*

 Thus we come to the central issue in this case: whether the statute of limitations was tolled throughout Tinker's two separate periods of incarceration, or whether the tolling ended, and the statute began to run, when Tinker was released from prison, supposedly on parole, in August 1989.

Although the parties disagree on the validity of Tinker's initial release, they do agree, and the record shows, that he was released from prison on August 11, 1989, and remained free for more than a month, until at least September 15, 1989.[7] D.C.Code § 12–302(a)(3) tolls the statute of limitations when a plaintiff is "imprisoned ... at the time the right of action accrues." In the District of Columbia, a cause of action generally accrues when the plaintiff suffers an injury—in the present case, on September 10, 1988. *See Brown v. Jonz,* 572 A.2d 455, 456 (D.C.1990).

There is no dispute that the statute was tolled by section 12–302(a)(3) from the moment of Tinker's arrest on September 10. *See Cannon v. District of Columbia,* 569 A.2d 595, 596 (D.C.1990). Finally, it is clear that a release from incarceration stops the tolling and re-starts the running of the statute of limitations. *Id.*

Both parties contend that this case turns on the validity of Tinker's August 1989 parole. The District, calculating the length of Tinker's sentence in light of statutorily mandated good-time credits, argues that this initial parole was lawfully granted. Thus the District concludes that since Tinker was legitimately paroled, the statute of limitations began to run on August 11, 1989. Tinker, on the other hand, asserts that his affidavit (see note 7, *supra*) demonstrated that his initial parole was invalid, as the trial court ruled, and that the statute of limitations did not begin to run until his *valid* parole in September 1990. The record does not conclusively establish whether the August 1989 parole was valid or invalid, but we conclude, for the reasons which follow, that the validity *vel non* of that parole is irrelevant.

Although the tolling issue presented here is one of first impression in the District of Columbia, other courts have held that an inmate's release from incarceration, whether valid or invalid, irrevocably starts the statute of limitations running as to any cause of action accruing at the time of his or her arrest. Moreover, and crucially for this case, the statute is not tolled again if the inmate is re-arrested. *Burrell v. Newsome,* 883 F.2d 416, 420 (5th Cir.1989);[8] *Kaiser v. Cahn,* 510 F.2d 282, 286 (2d Cir.1974);[9] *Stephens v.*

---

6. Thus this case is different from *Etheredge,* in which the plaintiff presented affirmative proof of negligent conduct by the police, *i.e.,* "evidence of alleged departures from the applicable standard of care on the part of the police, both before their entry into the Kerns home and thereafter." 635 A.2d at 918.

7. An affidavit by Tinker, included in the record, states that he was re-arrested on September 15, but the warrant for his re-arrest (which is also in the record) was issued on October 25. Neither party has addressed this apparent discrepancy, but in light of our disposition of the case, it need not be resolved.

8. "It is well settled [under Texas law] that the limitations period will commence to run immediately upon the removal of the disability of imprisonment. When the prisoner is freed from confinement, regardless of whether it is by an illegal means or by a legitimate means, the statute of limitations begins to run and it is not tolled by any subsequent imprisonment." *Burrell, supra,* 883 F.2d at 420 (citations omitted).

9. "The New York courts have construed the tolling statute as prohibiting the tacking of disabilities. Once the prisoner is released, the benefit of the tolling statute is lost forever. A later incar-

*Curtis,* 450 F.Supp. 141, 144 (S.D.Tex.1978); *cf. Simpson v. D.C. Metropolitan Police Department,* 789 F.Supp. 5, 8 (D.D.C.1992) (allegation that plaintiff was continuously incarcerated by either District or federal authorities created issue of fact as to possible tolling under D.C.Code § 12–302(a)(3), even though case for which he was initially arrested was dismissed for want of prosecution). The rationale for such a holding is set forth in cases such as *Hamil v. Vidal,* 140 Ill. App.3d 201, 488 N.E.2d 1024, 94 Ill.Dec. 777 (1985):

> A careful reading of the applicable statute here reveals that the limitations period is tolled only for that period of imprisonment during which the [tort] occurs, not during subsequent periods of incarceration. This is reasonable because once a prisoner is released ... nothing prevents the plaintiff from commencing his action at that time.

*Id.* at 204, 94 Ill.Dec. at 779, 488 N.E.2d at 1026.[10]

Further, Tinker has cited no authority whatever to support his contention that because his initial parole was allegedly invalid, the statute of limitations was tolled until his subsequent lawful parole. The cases on which he relies say nothing about the tolling of a statute of limitations. They hold only that a prisoner mistakenly released from custody, although allowed to count his time on release toward the completion of his sentence, must nonetheless be returned to prison to serve out the remainder of his sentence when the mistake is discovered. *Leonard v. Rodda,* 5 App. D.C. 256, 275 (1895); *White v. Pearlman,* 42 F.2d 788, 789 (10th Cir.1930); *Carson v. State,* 489 So.2d 1236, 1238 (Fla. 1986); *People v. Cavelli,* 50 N.Y.2d 919, 921, 409 N.E.2d 924, 925, 431 N.Y.S.2d 450, 451 (1980). Those decisions do not help us resolve the issue presented here.

Therefore, regardless of the validity of Tinker's initial release from custody in August of 1989, the fact remains that at that instant his disability of imprisonment was removed. Thus he was immediately able to pursue his claim against the District, and the time within which the law allowed him to do so—*i.e.,* the statute of limitations—began to run at the moment of his release. Tinker has cited no case, and we have found none, supporting his argument that the statute was tolled anew upon his re-arrest five weeks later. Consequently, the statute of limitations expired on August 11, 1990, almost a year before Tinker filed this suit in June 1991. *See Burrell v. Newsome, supra,* 883 F.2d at 420 (citing cases).

## IV

■ When an appellate court reverses a trial court ruling which it deems erroneous, the usual effect of the reversal is to return the parties to the position in which they were situated at the time of the erroneous ruling. *See Hessey v. Burden,* 615 A.2d 562, 569–570 (D.C.1992) (citing cases). In this case, however, a simple reversal will not achieve that goal. In his opposition to the District's motion to amend its answer, Tinker asked the court, if it granted the motion, to "allow him time for additional discovery and to name an expert in police practices and procedures." In making this request, Tinker was obviously looking ahead to a possible trial on counts I and III of his complaint. After the court denied the District's motion to amend, however, Tinker voluntarily dismissed those counts, leaving only count II to be tried. In the particular circumstances of this case, we think it appropriate to restore the *status quo* at the time of the erroneous ruling.

Accordingly, we hold that the trial court abused its discretion in denying the District's motion to amend its answer by adding the defense of the statute of limitations, and that it legally erred in denying on the merits the District's motion, based on the statute of limitations, for summary judgment on count II of the complaint. In addition, exercising our power under D.C.Code § 17–306 (1989) to do what is "just in the circumstances," we

---

ceration will not retoll the statute." *Kaiser, supra,* 510 F.2d at 286 (citations omitted).

**10.** The Illinois statute involved in *Hamil* is virtually identical in all material respects to D.C.Code § 12–302(a). *See* 140 Ill.App.3d at 202, 488 N.E.2d at 1025, 94 Ill.Dec. at 778. Since the *Hamil* case was decided, the Illinois statute has undergone minor revisions, but the holding of *Hamil* remains unaffected.

vacate the dismissal of counts I and III, reinstate those counts, and remand the case so that the trial court may rule on Tinker's request for additional discovery. The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*Reversed in part, vacated in part, and remanded.*

BELSON, Senior Judge, concurring in part and concurring in the result:

I join in Judge Terry's opinion except for that portion which states the basis for its holding that it was an abuse of discretion[1] to deny the District of Columbia's motion to amend its answer to include the defense of statute of limitation to Count II of appellee's complaint: "assault and battery—excessive force." As to Part II, I concur in the result of Judge Terry's opinion, but write separately because my appraisal of the controlling considerations is somewhat different from Judge Terry's.

Addressing the issue of abuse of discretion, I begin by setting out the most relevant historical and procedural facts:

1. On September 10, 1988, Metropolitan Police Officers severely beat Tinker and injured him while arresting him for carrying a dangerous weapon (knife with 4″ blade) and a toy (imitation) pistol.

2. On February 27, 1989, Tinker's counsel filed a letter for the purpose of serving the District of Columbia timely notice of the claim involved here.

3. On June 19, 1991, almost three years after the incident and more than two years after his notice to the District, Tinker filed his civil complaint. The second count of the complaint alleged that a police officer assaulted him through the use of excessive force. Significantly, the first count alleged essentially that the District's negligence in failing properly to train and supervise its officers proximately caused a particular officer's use of "excessive force" and the

officer's failure to "follow normal and accepted police practices and procedures." The third count charged the District with negligence in the medical care and treatment afforded Tinker at D.C. General Hospital and at a penal facility.

4. On August 23, 1991, the District filed an answer to the complaint but overlooked the defense of limitations with respect to the assault count.

5. On January 24, 1992, the parties entered a stipulation that "the issue of excessive force is within the ken of the jury and will not be presented through expert testimony" by either party.

6. On April 13, 1992, the parties filed a joint motion to extend the deadline for discovery from March 27 to May 15, 1992, and the deadline for dispositive motions to May 29, 1992, noting that those matters could be accomplished before the scheduled mediation date of June 11, 1992. The motion was promptly granted on April 17, 1992.

7. Also on April 13, 1992, the District filed a motion for leave to file an amended answer raising the defense of limitations. Plaintiff opposed the motion.

8. On May 31, 1992, the District filed a motion to dismiss Count II (assault and battery—excessive force) or, alternatively, for partial summary judgment as to that count, based on limitations.

9. On September 10, the trial judge entered a memorandum order denying the District's motion to amend its answer to assert limitations, and at the same time denying on the merits the motion to dismiss or for partial summary judgment on limitation grounds.

10. A few days later, on September 15, 1992, the court entered a pretrial order allowing certain discovery to be completed by November 30, 1992, and setting trial for March 22, 1993. The order noted that plaintiff had withdrawn Count I (negligent training, etc.) as of September 14, 1992.

---

1. Although I agree that there was an abuse of discretion, I emphasize a point we have made before: "While it is perhaps superfluous, we nevertheless note that abuse of discretion is a phrase which sounds worse than it really is. . . .

The term does not imply . . . any reflection on the judge." *United States v. Walker,* 772 F.2d 1172, 1176 n. 9 (5th Cir.1985) (quoted in *King v. United States,* 550 A.2d 348, 352 n. 3 (D.C.1988)).

11. On May 25 through 27, 1993, the case was tried before Judge Webber. At the time of trial, plaintiff withdrew Count III (negligent medical treatment) with prejudice. The jury returned a verdict in the amount of $500,000 against the District on Count II (assault and battery—excessive force).

I have set forth the procedural and historical facts in some detail because the trial court's exercise of discretion must be evaluated in light of the particular context in which it was made, and a ruling like that reviewed here must necessarily be very fact-based. In this case the trial court stated that three factors were important to its exercise of discretion. "First," the trial court stated, "there was indeed prejudice to the plaintiff." In this connection, the trial court referred to our opinion in *Whitener v. Washington Metro. Area Transit Auth.*, 505 A.2d 457 (D.C.1986) where we stated the legal principle that is central to this part of our discussion, *viz.*:

"we hold ... that when there is no substantial prejudice to the plaintiff, a defendant is not barred by [Super.Ct.Civ.] Rule 8(c) from raising the statute of limitations in a pre-trial motion, even though the statute has not been raised [seven months before] in the defendant's answer to the complaint." *Id.* at 460.

It is permissible (indeed, obligatory) that this court go beneath the surface of the trial court's conclusion of prejudice and examine its foundations. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir.1981). The two bases the trial court assigned to support its finding of prejudice here were that "all parties have gone through the entire discovery period," and "time and expense has been committed by the plaintiff."

As for discovery, the chronology set forth above makes it clear that on the day the motion to amend was filed, April 13, 1992, the parties jointly asked the court to extend discovery to May 15th, a request promptly granted by the trial court. This meant as a practical matter that five weeks were left for discovery at the time the motion was filed. Five months elapsed from the time of the filing of the motion to amend until the ruling of the court on September 10th. The pretrial order entered a few days later on September 15, 1992, allowed specified discovery to be completed by November 30, 1992, and set trial for March 22, 1993. For reasons which do not appear of record, the trial date was deferred until late May of that year.

This part of the chronology demonstrates that there was ample time for the plaintiff to conduct discovery on Count I and Count III prior to the actual close of discovery on November 30, 1992. A supplemental pretrial could have been completed in orderly fashion and the trial conducted within the original tight time schedule set by the Superior Court, which called for trial in March or, as it turned out, in May of 1993.

As for the commitment of time and expense by the plaintiff, it is true that the parties had completed most of the ordinary discovery that would relate to the assault count by the time the District filed the motion to amend, although some specific items were left open. But what is crucially important is that the negligence count, which the majority here does not hold to have been time-barred when filed, embraced within it an allegation that a police officer had used excessive force in the manner in which he handled the plaintiff. The plaintiff's allegations of negligent hiring, training and supervision would have come to naught unless the plaintiff could establish that the manner in which a particular police officer had treated plaintiff constituted excessive and unwarranted force. In order to establish Count I, plaintiff would have had to establish essentially the same facts required to establish an assault count, and more—the "more" relating to the allegations of inadequate hiring, training, and supervision. It is also important that nothing new by way of a discovery period or expense would have been required by the granting of the motion to amend that was not already contemplated by the plaintiff's original complaint.

In *Buder, supra*, the United States Court of Appeals for the Eighth Circuit reversed a trial judge's denial of a plaintiff's request for leave to amend the complaint, brought two and a half years after the original filing of

the complaint. In doing so, the court made observations relevant here. One of them is that it is well settled that delay alone is not a sufficient reason for denying leave to amend.[2] Another is that an appellate court should look behind a trial court's generalized statement of prejudice. The *Buder* court, when it did so, observed that the previously unasserted claim was based upon facts that were already known or available to all parties. The court also observed that to the extent that additional discovery might be necessary, it was well within the trial court's power to alleviate the burden on the opposing party by granting a continuance or compensating for any loss occasioned by delay. The court thought it relevant that there was no indication that the opposing parties were then less able to conduct any necessary additional discovery than they would have been if the amendment had been filed earlier. Finally, the *Buder* court observed that in a court's weighing of prejudice to the nonmoving party, that prejudice must be balanced against the hardship to the moving party if the motion is denied. *See also Scott v. Crescent Tool Co.*, 306 F.Supp. 884, 886 (N.D.Ga.1969). In light of the considerations discussed in *Buder* and the other factors stated above, the trial court's finding of prejudice cannot be sustained.

The second reason for denial of the motion assigned by the trial court was that the length of the delay, seven months, was "truly inexcusable." Our dissenting colleague recasts this basis for the trial court's action in the more attractive form of concern for the administration of justice. Judge Schwelb, dissenting, *post* at 73–74. But the District's conduct here, while far from exemplary, should not give rise to any such concern.

It appears to me, first, that it goes too far to say that a delay of this length (over seven months) is "inexcusable," and this is especially so, as I will explain, for the particular reason the court assigned. Rather, the inquiry here is whether the court should depart from the generally liberal policy of Super.Ct.Civ.R. 15(c) regarding amendments of pleadings in light of the particular circumstances of the case and the requirement of Super.Ct.Civ.R. 8(c) that the defense of limitations be affirmatively pleaded, and normally raised promptly. The trial court indicated that it deemed the delay particularly inexcusable since the District is accustomed to defending large numbers of complaints by incarcerated prisoners. To the extent that this suggests that the District is to be held to a higher standard of pleading in this regard than litigants generally, I cannot agree. Certainly, there are countervailing factors, also not of record here, concerning the workload and funding levels of the Office of Corporation Counsel that might tend in a general way to offset any argument that the District is to be held to a higher standard due to institutional experience. The appropriate approach, I think, is to hold the District to the same standard as any other litigant without any assumptions about institutional experience or degrees of staffing or supervision.

I agree with our dissenting colleague that evaluation of the conduct of defendant's counsel here should take into account and balance a variety of factors. Some basic principles applicable here are set forth in Justice Goldberg's opinion in *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962):

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities[.] "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."

\* \* \* \* \* \*

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.... In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant,

---

2. *See Eagle Wine & Liquor Co. v. Silverberg Elec. Co.*, 402 A.2d 31, 35 (D.C.1979) ("refusals to grant amendments on the grounds of 'lateness' or 'delay' alone may properly be reversed").

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Id.* at 181–82, 83 S.Ct. at 230 (citations omitted).

Applying these considerations, I am unable to agree with the dissent on the impact of the requested amendment on the administration of justice. Certainly, it cannot be argued that the assertion of limitations would have significantly increased the cost of litigation. The excessive force allegations of Count II had to be proven in order to make out a case of negligent hiring, training and supervision under Count I. Nor would judicial effectiveness in administering crowded calendars have been compromised because the remaining discovery could have been accomplished within the time the court permitted for other discovery even while denying the amendment, and the trial could have been held within the trial court's original time frame.

This case stands at the opposite end of the spectrum from *Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152, 1158 (2d Cir.1968). There, by delaying its assertion of the statute of limitations in the United States District Court for the Southern District of New York, the defendant strung the plaintiff along until it was too late for the plaintiff to bring the same action in another jurisdiction where it would not have been time barred. In this case, the seven-month delay in raising the statute of limitations had no such effect on the plaintiff who, moreover, was left with the other two counts arising out of the same series of events.

The third ground for denial set forth by the trial court was that the defendant had impliedly waived the limitations defense by joining in a stipulation that expert testimony would not be needed on the excessive force issue. It is obviously true that when the District entered this stipulation (less than three months before it attempted to assert limitations) the Office of Corporation Counsel still had not awakened to the availability of limitations as a defense. But it is stretching it to call this unfortunate temporary oblivion a waiver. The trial court's specific rationale was that "having focused upon how precisely both parties would proceed to present their evidence on the excessive force issue, there is utterly no way to explain how the District could have 'inadvertently' not realized the time sequence of all events involving the assault and the filing of this law suit." This does not follow, as the stipulation dealt with the mechanics of trial preparation and trial itself rather than the various time periods that had elapsed between the date of the incident and the filing of the law suit.

We are obviously dealing with what Justice Goldberg referred to in *Foman, supra,* as a "misstep by counsel" rather than a waiver. Even if plaintiff's counsel began to rely on some implication that limitations would not be pled, there was no resulting step he took during the eleven weeks that intervened between the filing of the stipulation and the motion to amend that could not readily have been retraced in a short time and with no prejudice. Specified discovery remained open for another seven months after the motion to amend was filed, and the trial date was set for some eleven months after the motion to amend was filed, with the actual trial following another two months later. It is, moreover, safe to say that plaintiff's counsel had been considering, even before the time the complaint was filed, the avenues of discovery he would wish to follow on Counts I and III and the nature of the expert witnesses he might retain.

It was incumbent upon the Corporation Counsel, as the guardian of the public fisc, to advance the defense of limitations. While the defense of limitations may not be a substantive defense, it is one created by statute and adopted for strong public policy reasons. "Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system." *Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980). *See Bond v. Serano,* 566 A.2d 47, 50 (D.C.1989) (Farrell, J., concurring). Those reasons are so strongly presumed to exist after the specified time has passed that a defendant need not specify reasons for raising a limitations de-

fense in a particular case, but may simply assert it. The Corporation Counsel's unfortunate misstep here should not deprive the District of this defense, and thus prejudice the District with the imposition of a $500,000 judgment. The plaintiff's counsel knew all along of the limitations issue and stated in opposition to the motion to amend that it was "patently obvious" from the pleadings that more than a year had passed from the time of the incident until the time of the filing of the action. Plaintiff had contemplated preparation and presentation of Counts I and III from the time the action was filed. In light of the particular circumstances of this case, I concur with Judge Terry that the denial of the motion to amend must be reversed, and the case remanded for further proceedings.[3]

SCHWELB, Associate Judge, dissenting:

I am unable to agree with the majority's conclusion that the trial judge abused her discretion in denying the District's motion for leave to amend its answer. Accordingly, I vote to affirm the judgment.

## I.

### SCOPE OF REVIEW

"Once responsive pleadings have been filed, permission to amend is entrusted to the sound discretion of the trial court and appellate court review of the question is limited to whether there was an abuse of discretion." *Gordon v. Raven Systems & Research, Inc.,* 462 A.2d 10, 13 (D.C.1983) (citations omitted). "[A]t bottom, [it is] the trial judge [who] must balance [the] competing interests." *Id.* Where the judge has denied leave to amend on the grounds of prejudice to the non-moving party, we inquire whether the finding of prejudice "has a rational basis in the record." *Id.* "[T]he appellate court, in its review capacity, does not render its own decision of what judgment is most wise under the cir-

cumstances presented." *Johnson v. United States,* 398 A.2d 354, 362 (D.C.1979). On the contrary, "[our] role in reviewing the exercise of discretion is supervisory in nature and deferential in attitude." *Id.* (citations and internal quotation marks omitted).

In this case, the trial judge issued a written order in which she enumerated several reasons for denying the District's motion. An examination of her reasons and of the record as a whole persuades me that reversal is unwarranted.

## II.

### PREJUDICE

A. *Pre-order prejudice to the plaintiff.*

The trial judge recognized, and I agree, that leave to amend should be freely granted if "no substantial prejudice would result from permitting the defendant to raise an affirmative defense at a later stage in the litigation." Order at 3 (quoting *Whitener v. Washington Metro. Area Transit Auth.,* 505 A.2d 457, 459 (D.C.1986)). She noted, however, that leave to amend need not be granted where there has been "undue delay" or where allowance of the amendment would result in "undue prejudice" to the opposing party. *Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). The judge found that, in this case, "there was indeed prejudice to the plaintiff" because

[a]ll parties [had] gone through the entire discovery period. Time and expense [had] been committed by the plaintiff.

Order at 3.

The language quoted above, although somewhat cryptic, constitutes a factual finding that Tinker changed his position, and spent time and money, in reliance on the District's failure to plead the statute of limitations until ten months after the suit was

---

3. I note in particular my agreement with Judge Terry that we should exercise our authority under D.C.Code § 17–306 (1989) to vacate the dismissal of Counts I and III, reinstate those counts, and remand for further proceedings on them. It is my view that basic fairness requires that the parties be placed back in the positions in which they found themselves at the time that the trial court erroneously denied the motion to amend.

If they should not be, the combination of the District's lateness in asserting limitations, the trial court's erroneous denial of leave to assert limitations, and plaintiff's predictable subsequent litigation strategy would have placed the District in a far better position than it would have been in had it asserted limitations in timely fashion— and will have left the plaintiff without his judgment for $500,000.

brought. It was obviously the judge's view that if the District were permitted to change course after the plaintiff had acted in reliance in the District's initial position, the plaintiff would be significantly prejudiced. A trial judge who has been supervising the litigation obviously knows more than an appellate court knows about the course of the case, and we must sustain her finding that Tinker would be prejudiced unless that finding is unsupported by the record. *See* D.C.Code § 17–305 (1989).

The principal basis for the judge's finding of prejudice appears to have been that Tinker had conducted his discovery in reliance on the District's position. In his separate concurring opinion, Judge Belson makes the point that in order to prevail on Count I (the negligent training count) Tinker would have been required to prove that, as a result of their negligent training, the police officers used excessive force. Accordingly, in Judge Belson's view, any discovery which Tinker had devoted to the question of excessive force would continue to be relevant to the case even if the District was permitted to amend its answer and even if, following that amendment, Count II was dismissed as time-barred. If the time and effort expended on this discovery were not wasted, then, according to Judge Belson, Tinker was not prejudiced.

I cannot quarrel with Judge Belson's logic; the use of excessive force was indeed an element of Count I. Although the continued usefulness of Tinker's "excessive force" discovery for the litigation of Count I is relevant, however, I do not believe that this point conclusively negates Tinker's claim of prejudice.

For more than half a year, Tinker's attorneys were led to believe that the statute of limitations was out of the case and that Count II was going to be decided on the merits. In fact, the District expressly stipulated that expert testimony would not be required on the question of excessive force, and thus implicitly represented that counsel

for Tinker could try the case on the plaintiff's simplest and strongest claim without retaining expert witnesses. As a result, counsel obviously placed Counts I and III [1] on the back burner and did not conduct discovery on these claims.

The strategy adopted by Tinker's attorneys in reliance on the District's actions was not at all unreasonable. The trial judge found that "the plaintiff and his counsel are equitably entitled to rely upon the impact of this stipulation." Surely she was absolutely right.

Expert witnesses do not come cheap. A litigant in Tinker's position has limited resources available to pay experts or to conduct complex discovery relating to expert testimony. After Tinker's attorneys had secured a stipulation that expert testimony would not be required on the excessive force claim, they concluded that they had an excellent chance of prevailing on that claim, and that it would therefore be unnecessary for them to retain an expert witness or to conduct discovery on Tinker's negligence claims.[2]

If the trial judge had granted the District leave to amend its answer, and if the limitations defense to Count II had been sustained, then Tinker's attorneys would have been compelled to alter in a most radical way the mindset and litigation plan pursuant to which they had been conducting the case for more than half a year. It would also belatedly have become necessary for counsel to take Counts I and III off the back burner and proceed with discovery and the naming of experts. Any competent trial lawyer would surely agree that a case (or a part of a case) is a great deal more difficult to put together when, for some reason, counsel has not actively pursued it for a substantial period of time.

There was therefore ample support in the record for the judge's finding that Tinker would have been significantly prejudiced if the District had been permitted to amend its answer. To be sure, the judge could plausi-

---

1. Count III was the medical negligence count.

2. The trial judge's subsequent denial of the District's motion for leave to amend the answer reinforced the assessment that expert testimony

would not be needed, and Tinker thereafter dismissed all of his claims except Count II. See Part II B, *infra.*

bly have reached a different result. In my opinion, however, the judge's finding was rational, and it should be sustained under our deferential standard of review.

### B. *Post-order prejudice to the plaintiff.*

The prejudice to Tinker which led to the judge's denial of the District's motion has been compounded by events which have occurred since the judge's order. Tinker alleged in his opposition to the District's motion for leave to amend its answer that

he would have sought discovery, including the naming of an expert in terms of improper police procedures, *if this defense had previously been raised.* Plaintiff did forego the other avenues of relief based on defendant's answer which failed to raise the Statute of Limitations.

Tinker contended that, in the event that the motion for leave to amend was granted, he should be allowed "time for additional discovery and to name an expert in police practices and procedures." At the time that Tinker filed his opposition, it was still possible for him to litigate Counts I and III, although Tinker would obviously have been prejudiced in the preparation and presentation of these claims by the delay occasioned by the District's *change of direction.*

After the judge denied the District's motion, however, there was no occasion to conduct the additional discovery, and Tinker, relying on the judge's ruling, promptly dismissed Counts I and III. The District takes the position that the two dismissed counts, now time-barred, *see* D.C.Code § 12–301(8) (1995), are out of the case. My colleagues, in a laudable effort to do equity, see Part IV of Judge Terry's opinion, *ante* at 65, and Judge Belson's opinion, *ante* at 70, n. 3, effectively reinstate these counts, but Tinker is now compelled to try to reconstruct, many years after the fact, a case requiring expert testimony. The District's initial failure to assert its limitations defense, and its abrupt change of strategy, thus resulted in the entry of an order which led Tinker to dismiss claims which he could have (and surely would have) promptly litigated on the merits if the District had invoked the statute of limitations (as to Count II) in its original answer. In

my opinion, the plaintiff's loss of an opportunity to litigate, without undue delay, the negligent training and medical negligence claims, constitutes obvious, palpable prejudice.

The trial judge could not and did not address the question of post-order prejudice to Tinker, for the relevant events occurred after her disposition of the District's motion. The judge did explicitly rule, however, that Tinker was "equitably entitled" to conclude (on the basis of the District's stipulation that expert testimony would not be required at the trial of Count II) that Count II would in fact be tried. In light of that holding, I find it inconceivable that, if the case were remanded to her, the judge would find unreasonable Tinker's reliance on the judge's ruling, in which the judge vindicated plaintiff's right to rely on that stipulation. *See, e.g., Ouriaghli v. Moore,* 621 A.2d 392, 395 (D.C. 1993).

If we treat the issue as one for this court to decide in the first instance, I would likewise hold that Tinker's reliance on the judge's ruling was reasonable. The decision whether to allow a party to amend its answer is a highly discretionary one. Here, the District had made a belated and abrupt about-face which departed not only from the position taken in the District's original answer but also from the understanding upon which the stipulation between the parties was based. Knowing that Tinker had relied on the District's initial position, the judge declined to allow the District to amend. Tinker had no reason to believe that the trial judge's ruling on such a discretionary call would subsequently be vacated as erroneous, and I do not think we should second-guess his counsel's decision, in light of the judge's order, not to spend time and money on expert witnesses "just in case."

### C. *The lack of "on the merits" prejudice to the District.*

The judge's finding that Tinker would suffer prejudice if the District were belatedly allowed to amend its answer is further supported by the incontrovertible fact that any prejudice which the District suffered as a result of the denial of its motion related solely to a technical defense. The District

was not precluded from presenting its position on the merits, and indeed did so when the case came to trial.

As Judge Terry expressly recognizes, *maj. op.* at 60, the statute of limitations is a defense which a defendant is obliged to raise in a responsive pleading, and which the trial court may deem waived if it has not been promptly asserted. *See* Super.Ct.Civ.R. 8(c); *Feldman v. Gogos,* 628 A.2d 103, 104–105 (D.C.1993); *Whitener v. Washington Metropolitan Area Transit Authority,* 505 A.2d 457, 458 (D.C.1986). Statutes of limitations

> protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise.

*United States v. Kubrick,* 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979); *Hobson v. District of Columbia,* 686 A.2d 194, 198 (D.C.1996); *Ehrenhaft v. Malcolm Price, Inc.,* 483 A.2d 1192,1202 (D.C.1984) (quoting *Kubrick*); *see also Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 349, 22 L.Ed. 636 (1874). "Statutorily imposed limitations on actions are technical defenses which should be strictly construed to avoid the forfeiture of a plaintiff's rights." *Steketee v. Lintz, Williams & Rothberg,* 38 Cal.3d 46, 210 Cal. Rptr. 781, 694 P.2d 1153, 1158 (1985) (citation omitted); *see also Owens–Corning Fiberglas Corp. v. Henkel,* 689 A.2d 1224, 1233 (D.C. 1997) (quoting *Steketee* ). Such defenses may present "obstacles to just claims." *Id.* This court has stated that "the statute of limitations is not such a meritorious defense that either the law or the facts should be strained in aid of it." *Simpson v. District of Columbia Office of Human Rights,* 597 A.2d 392, 399–400 (D.C.1991) (citation omitted). The majority's holding that the trial judge was *required* to allow the District to amend its answer to assert a limitations defense awards to the statute of limitations a rank in our hierarchy of values which, in light of the authorities cited, it assuredly does not deserve.

In the present case, the District makes no claim that it could not defend Count II because documents had been lost or because memories had faded. On the contrary, any such documents or memories would also have been relevant, at least, to Count I, which the District would have had to defend even if Count II had been dismissed. The District had also received pre-suit notice of the claim pursuant to D.C.Code § 12–309 (1995). It suffered no prejudice to its ability to contest the merits.

It is true, as Judge Terry observes, that pleadings are to be construed so as to do justice, *see* Super.Ct.Civ.R. 8(f), and that Rule 8(f) has been "consistently interpreted to reflect 'a preference for resolution of disputes on the merits, not on technicalities of pleading.'" See *maj. op.* at 60 (citations omitted). In fact, however, the jury *has* decided this dispute on the merits, and it is the District that now insists that the complaint be dismissed on technical grounds.

Basically, the District is asking that its own technical error be excused so that it can belatedly assert a technical defect in the plaintiff's case; Tinker is to bear the consequences of his untimeliness, says the District, but the District's own tardiness should be overlooked. By this double standard, the District seeks to escape the results of an impartial tribunal's resolution of the substantive controversy between the parties. But disposition of litigation on the basis of counsel's technical errors and omissions is a two-edged sword, and this is the kind of case in which those who live by such a sword should die by it.

### III.

### THE ORDERLY ADMINISTRATION OF JUSTICE

The trial judge's second reason for denying the District's motion to amend was that "the length of delay [was] truly inexcusable." She explained that "[t]hese kinds of technical defenses are of great benefit to ... governmental defendants, in terms of avoiding the expense of litigation and in light of the volume of litigation in this particular area." Judge Terry asserts that "whether the delay was excusable or inexcusable is really beside the

point." *Maj. op.* at 61. This perception of "the point" is, in my view, unduly constricted.

"It is the responsibility of the trial court, when exercising its discretion, to fashion a ruling by balancing a variety of factors." *Gordon, supra,* 462 A.2d at 13. The court should consider, *inter alia,* "the orderly administration of justice" and the adverse effects thereon of the moving party's requests. *Id.* at 13.[3] Although the trial judge did not expressly articulate her reasoning in terms of the administration of justice, her reference to the length of the delay and to the expense of litigation came very close to the point which the court was making in *Gordon.* If a litigant, and especially an experienced institutional litigant like the District,[4] is permitted to defer the assertion of a limitations defense until after there has been discovery with respect to the allegedly time-barred claims, then the costs of litigation will be significantly increased, and judicial effectiveness in administering crowded dockets will be compromised.

"If the defense [of the statute of limitations] lurks in the case, vacillation can cause the other party irreparable injury." *Strauss v. Douglas Aircraft Co.,* 404 F.2d 1152, 1155 (2d Cir.1968); *accord, Whitener, supra,* 505 A.2d at 460 (quoting *Strauss).* By the same token, such vacillation can complicate and prolong the proceedings, to the prejudice of sound judicial administration, and the "risk of substantial prejudice increases in proportion to the length of [the] defendant's delay in seeking the amendment." *Strauss, supra,* 404 F.2d at 1155.

If the trial judge had permitted the District to amend its answer, then Counts I and III would necessarily have been taken off the back burner, and the judge would have had to act on Tinker's alternative request for leave to name an expert witness and for extension of discovery. In light of the stipulation of the parties and Tinker's right to rely on it—a right which the trial court expressly recognized—equitable considerations would have required the judge to give favorable consideration to Tinker's request, and probably to grant it. Although discovery was complete, the judge would have had to reopen it. This would have meant more expense and delay, to the prejudice of orderly judicial administration. A ruling in favor of the District would thus have "prejudice[d] not only the [plaintiff] but also the ability of other persons—persons [who] are doing what is necessary to follow the rules—to utilize the system." *Perry v. Sera,* 623 A.2d 1210, 1219 (D.C.1993). The trial judge's ruling was laudably designed, in part, "to alleviate some of the languor which often plagues the civil calendar." *Id.* at 1219 n. 23 (quoting *Solomon v. Fairfax Village Condominium IV Unit Owner's Ass'n,* 621 A.2d 378, 379–80 (D.C.1993)).

## IV.

## THE STIPULATION

The trial judge also concluded that

the defendant has impliedly waived [the limitations] defense because the District took the affirmative step of joining with the plaintiff in filing a stipulation that speaks directly to how the parties will proceed on this count in the complaint. On January 24, 1992, the parties filed a[s]tipulation, in which counsel specifically agreed that "at the trial of the above captioned case the issue of excessive force is one within the [ken] of the jury and will not be presented through expert testimony by either the plaintiff or the defendant."

**3.** The assertion that "the *only* issue here is whether the delay resulted in prejudice to the opposing party," *maj. op.* at 61 (emphasis added), overstates the case and cannot be reconciled with *Gordon. See also* 3 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 15.08[4], at 15–69 to 15–75 & nn. 6–11 (2d ed. 1996) (enumerating common reasons for denying leave to amend, but explaining that "[t]hese reasons are, of course, not exhaustive.").

**4.** In this case, as in *Faith v. Texaco, Inc.,* 48 F.R.D. 118 (W.D.Mich.1969), it is significant that

the District was "in a position from the date of the filing of the complaint to explore and determine promptly all of the essentials of any defense of the statute of limitations." *Id.* at 121. I agree with Judge Belson, however, that the District should be held to the same standard of pleading as any other litigant, no higher, as he points out, but also no lower. *See, e.g., District of Columbia v. Wical Ltd. Partnership,* 630 A.2d 174, 183 (D.C.1993).

The District asserts in regard to the finding of waiver that "[i]t is difficult to fathom the trial court's reasoning." According to the District, "[t]he stipulation that permitted both parties to dispense with expert witnesses with respect to the question of excessive force had absolutely nothing to do with the statute of limitations." I find the District's analysis most unpersuasive.

If, as the District now asserts, all of Tinker's excessive force claims were subject to dismissal under the one-year statute of limitations, then the stipulation was patently superfluous. Indeed, it would serve no purpose to enter a stipulation regarding the manner in which specified claims are to be tried if those claims are time-barred. By signing the stipulation, the District was representing, at least implicitly, that the excessive force claims were to be decided on their merits during the trial. Such a representation would be absurd with respect to a time-barred claim, and the stipulation thus conveyed the message that the claims were timely. When the District subsequently moved to amend its answer and to dismiss Count II, it was asserting the exact opposite of the prior message implied by the stipulation.

The trial judge found that Tinker was "equitably entitled to rely upon the impact of this stipulation." I agree. A litigant's change of mind obviously does not preclude the granting of leave to amend in every situation, but the District should not readily be permitted to change course so dramatically where discovery was complete, and where, as here, Tinker had set his litigation strategy in reliance on the District's original position.[5]

### V.

### *WHITENER*

The District places heavy reliance on our decision in *Whitener*. That case, in my opinion, provides scant support for the District's position.

The question presented in *Whitener* was whether WMATA's failure to raise the statute of limitations in its answer constituted a waiver of that defense. The trial judge granted WMATA's motion for judgment on the pleadings, in which WMATA did raise a limitations defense. This court affirmed "[b]ecause appellants made no showing of prejudice, and the record disclose[d] none." 505 A.2d at 457. We relied on "the same type of 'prejudice' standard [trial] courts regularly employ in determining whether to permit amendments to pleadings." *Id.* at 459 (quoting *LaPorte v. R.D. Werner Co.*, 561 F.Supp. 189, 191 (N.D.Ill.1983)).

There is a critical and, to me, dispositive difference between *Whitener* and the present case. In *Whitener*, the trial judge had found that the belated assertion of a limitations defense would cause *no* prejudice, and she therefore *permitted* WMATA to assert that defense notwithstanding WMATA's failure to include it in its answer. In the present case, on the other hand, the trial judge found that the introduction of such a defense after discovery had been completed *would* cause prejudice to the plaintiff, and she *denied* the District's motion for leave to amend. Because, absent clear abuse or legal error, the disposition of a motion for leave to amend a pleading is basically the trial judge's call, *Gordon, supra,* 462 A.2d at 13, the deferential standard which I have described in Part I of this opinion dictated affirmance both in *Whitener* and in this case. Moreover, in the present case, the parties had effectively stipulated that the excessive force claims would be presented to the jury, and there was no comparable stipulation in *Whitener*.

### VI.

### CONCLUSION

Because he was led to believe that the "excessive force" claims were properly in the case, Tinker found it unnecessary to proceed to trial on those counts of his complaint for which he would have had to retain an expert witness. Apparently in reliance on the stipulation—reliance which the trial judge found to be altogether justified—Tinker did not

---

5. "The kind of barristerial about-face which characterizes this case finds little favor in the courts." *In re Abrams,* 689 A.2d 6, 9 (D.C.1997) (quoting *B.J.P. v. R.W.P.,* 637 A.2d 74, 78 (D.C. 1994)).

name an expert witness or otherwise prepare for trial on those counts, and he subsequently dismissed them in reliance on the trial judge's order. Tinker now having obtained a substantial jury verdict, the District insists, and my colleagues hold, that the claim on which he went to trial is time-barred. If we were to accept the District's position in its entirety, then Tinker would now find himself in a trap, for the claims that he dismissed in reliance on the stipulation and the trial court's ruling would also be time-barred and it would be far too late to resuscitate them.

To me, the result for which the District contends is most inequitable. To paraphrase a passage from the Supreme Court's opinion in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (per curiam):

> In view of the obvious great hardship to a party who relies upon the trial judge's finding of [prejudice] and then suffers reversal of the finding, it should be given great deference by the reviewing court. Whatever the proper result as an initial matter on the facts here, the record contains a showing of unique circumstances sufficient that the Court of Appeals ought not to have disturbed the motion judge's ruling.

*Id.* at 217, 83 S.Ct. at 285. My colleagues have alleviated the injustice which would flow from the District's position by returning the parties to the *status quo ante,* and by thus effectively reinstating the dismissed claims. Tinker is now faced, however, with the Herculean task of resuscitating a case which the passage of time has rendered very stale indeed.

The jury's verdict established that Tinker was gravely abused and mistreated by officers sworn to uphold the law. I have described the way in which the District's change of course, after Tinker had relied on the District's original position, effectively did him in. Ironically, the District probably finds itself better off today than it would have been if it had asserted the limitations defense in the first place, for at that time Tinker could have presented a fresh case on Counts I and III. Now, as a result of the District's error, Tinker will instead have to try to reassemble an ancient one.

I respectfully dissent.[6]

---

6. Because, in my judgment, the trial court's order denying the District's motion for leave to amend its answer ought to be sustained, I do not think it necessary for the court (or for me) to reach any other issues. For the reasons stated below, however, I am not as convinced as my colleagues are that Count II of the complaint—the sole count that went to trial—is time-barred in its entirety.

In paragraph 9 of the complaint, which is the lead paragraph of Count II, Tinker "adopts and incorporates by reference herein each and every allegation of paragraphs 1 through 8 of Count I." In paragraph 5, one of the paragraphs incorporated into Count II by reference, Tinker alleges that the police officers

> failed to properly follow normal and accepted police practices and procedures, used excessive force in effectuating the arrest of the [p]laintiff, Joseph E. Tinker, did not respond properly to the situation as it existed, failed to react in a proper manner; violated the [p]laintiff's civil rights; and otherwise abused the [p]laintiff, Joseph E. Tinker.

A complaint should not be dismissed for failure to state a claim upon which relief may be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted). The complaint must be construed in the light most favorable to the plaintiff. *Vincent v. Anderson,* 621 A.2d 367, 372 (D.C.1993). Moreover, "[i]f there is any reasonable doubt in a statute of limitations problem, the court will resolve the question in favor of the complaint standing and against the challenge." *Simpson, supra,* 597 A.2d at 401 (quoting *Saunders v. Holloway Constr. Co.,* 724 F.Supp. 640, 642 (W.D.Ark.1989)). Applying these principles to Count II, it would be reasonable to conclude that Tinker has fairly alleged negligence on the part of the officers, as well as intentional assault and battery. If he has, then the three-year statute of limitations apparently applies. *See* D.C.Code § 12–301(8) (1995). *Compare Maddox v. Bano,* 422 A.2d 763, 764–65 (D.C.1980), relied on by the District, *with Etheredge v. District of Columbia,* 635 A.2d 908, 918 (D.C.1993), cited by Tinker.