James E. ARNOLD, Plaintiff,

v.

DISTRICT OF COLUMBIA, et al., Defendants.

No. Civ.A. 01–1327(RCL).

United States District Court, District of Columbia.

July 19, 2002.

James E. Arnold, Terre Haute United States Penitentiary, Terre Haute, IN, plaintiff pro se.

Michelle A. Arcari, Office of Corporation Counsel, District of Columbia, Washington, DC, for defendant.

### MEMORANDUM OPINION

LAMBERTH, District Judge.

Now before the Court is defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted. Specifically, defendants contend that this Court lacks subject matter jurisdiction because plaintiff's claims, pursuant to 42 U.S.C. § 1983, are time-barred by the District of Columbia statute of limitations, and that even accepting the facts in plaintiff's complaint as true, he fails to state a claim upon which relief can be granted. Defendants' Motion to Dismiss at 1. After careful review of the motion, the opposition thereto, and the applicable law, defendants' motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief may be granted, is GRANTED.

## I. BACKGROUND

### A. Facts

Plaintiff (or Mr. Arnold) alleges that on January 21, 1996, two Metropolitan Police Department ("MPD") officers stopped his car, ordered him to step out at gunpoint, and forced him onto the ground. Complaint ¶ 5. Plaintiff claims that after the officers repeatedly questioned him about a robbery and murder that occurred at a nearby store, they took him to the Sixth District Police Station, where he alleges

that he was placed in a choke hold and rendered unconscious for more than fifteen minutes. *Id.* After regaining consciousness, two officers that had removed their name tags and badges allegedly punched him in the head and face, and refused his subsequent request for medical attention. *Id.* Plaintiff suffered a broken collar bone, supposedly from the January 21 incident. Complaint, Exhibit E. In addition, plaintiff claims that the police had his car towed, and never returned it to him. Complaint ¶ 5. On January 22, 1996, the charge pending against plaintiff for driving without a permit was dismissed in D.C. Superior Court, and he was released from custody. *See* Complaint, Exhibit F. On February 5, 1996, plaintiff was re-arrested for felony gun possession stemming from an unrelated domestic incident. Several days later, Mr. Arnold filed suit against defendants before requesting his case be dismissed in order to obtain counsel. Complaint, Exhibit D. On March 8, 1996, plaintiff was sentenced to three and one-third to ten years in prison on the gun charge, and is currently incarcerated. *See* Plaintiff's Opposition to Defendants' Motions to Dismiss, Exhibit G November 9, 2001.

**B. Procedural history**

On June 14, 2001, Mr. Arnold filed this complaint for Violation of Civil Rights under 42 U.S.C. § 1983, alleging excessive force, violation of his Eighth and Fourteenth Amendment rights, false imprisonment, police misconduct, illegal confiscation of property, and violation of the Federal Racketeering Influence Corrupt Organization Act ("RICO") under 18 U.S.C. §§ 241–42. *See* Complaint ¶¶ 1–5. Defendants contend that plaintiff's claims, liberally construed, amount to the use of excessive force and deliberate indifference in the civil rights context, and the common law torts of assault, battery, false arrest/false imprisonment, and re-

plevin. *See* Defendants' Motion to Dismiss at 4. Plaintiff seeks $800,000 in compensatory damages, $2.5 million in punitive damages, a jury trial, and court appointment of counsel. Complaint ¶ 5. Defendants move to dismiss plaintiff's case for lack of subject matter jurisdiction based on statute of limitations grounds, and for failure to state a claim upon which relief can be granted.

**II. ANALYSIS**

**A. Standard of Review**

■ Pursuant to Federal Rules of Civil Procedure 12(b)(1), the court must dismiss if it lacks subject matter jurisdiction to hear and decide the dispute. FED.R.CIV. PRO. 12(b)(1). In evaluating whether it has subject matter jurisdiction, the court must construe the complaint liberally, and attribute all reasonable inferences to the plaintiff. *Tozzi v. E.P.A.,* 148 F.Supp.2d 35, 41 (D.D.C.2001) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). The court must view the allegations as a whole, and a conclusory averment of subject matter jurisdiction negated by other allegations in the pleading should result in dismissal. *Tozzi,* 148 F.Supp.2d at 41 (citation omitted). To avoid dismissal, subject matter jurisdiction must have existed on the date that the lawsuit was filed. *Rosa v. Resolution Trust Corp.,* 938 F.2d 383 (3d Cir.1991). A dismissal for lack of subject matter jurisdiction is usually not a decision on the merits, and will not preclude the plaintiff from instituting the claim in a court that may properly hear the dispute. *Leaf v. Supreme Court of Wisconsin,* 979 F.2d 589, 595 (7th Cir.1992).

The court also must dismiss a complaint, pursuant to Federal Rules of Civil Procedure 12(b)(6), if the plaintiff has failed "to state a claim upon which relief can be

granted." FED.R.CIV.P. 12(b)(6); *see Hishon v. King Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1114 (D.C.Cir.2000). In considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, and give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Saunders v. Caldera,* 193 F.Supp.2d 1, 3 (D.D.C.2001) (citing *Schuler v. United States,* 617 F.2d 605, 608 (D.C.Cir.1979)). Dismissal is only appropriate if it appears beyond doubt that no set of facts proffered in support of plaintiff's claim would entitle him to relief. *Haynesworth,* 820 F.2d at 1254 (citations omitted). "However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." 2A MOORE'S FEDERAL PRACTICE AND PROCEDURE § 12.07 (2d ed.1986) (footnote omitted); *see Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C.Cir.1987) (citing *Pauling v. McElroy,* 278 F.2d 252, 254 (D.C.Cir.1960), *cert. denied,* 364 U.S. 835, 81 S.Ct. 61, 5 L.Ed.2d 60 (1960)).

### B. Insufficient service of process

Plaintiff names two unknown officers that allegedly violated his constitutional rights as defendants John and Joe Doe in his complaint. *See* Complaint ¶ 4. Since the identity of these officers remains unknown to Mr. Arnold, he was unable to properly serve notice to them. The complaint was filed on June 14, 2001, and these officers, whoever they are, have not been served notice regarding this suit. Neither Mr. Arnold nor Sergeant Weatherby, Chief of Internal Affairs for the MPD,[1] have been able to identify these two officers by name, and plaintiff could not serve process on them if the Court were to grant him more time to do so. Should Mr. Arnold discover the true identity of the individual officers, he can re-file against them, and the Court will hear his complaint. Because Mr. Arnold is unable to identify the officers that violated his rights, his claims against them as individuals must be dismissed without prejudice.

### C. Statute of limitations

The District of Columbia statute of limitations applies to claims brought under 42 U.S.C. § 1983 based on events that took place in the District of Columbia. *Simpson v. Dist. of Columbia Metro. Police Dep't,* 789 F.Supp. 5, 6 (D.D.C.1992). The District of Columbia maintains a one-year statute of limitations for assault, battery, and false arrest/imprisonment claims. D.C.CODE ANN. § 12–301(4) (1981). There is a three-year statute of limitations for an action in replevin, and all other actions under 42 U.S.C. § 1983. D.C.CODE ANN. § 12–301(8) (1981).

■ The statute of limitations may be tolled when the complainant is "imprisoned . . . at the time the right of action accrues." *Simpson,* 789 F.Supp. at 8. In *Simpson,* for example, the plaintiff was

---

1. *See* Complaint, Exhibit D, which contains the correspondence between Mr. Arnold and Sergeant Weatherby, Chief of Internal Affairs for the MPD. In the April 1999 letter to Sergeant Weatherby, Mr. Arnold alleged that he saw the name J. Byrd with the badge number 0032 "clear as day" on the arresting officer. Internal Affairs could not find any J. Byrd on the force. This is because Jerry Byrd is the magistrate/commissioner who dismissed plaintiff's "no permit" traffic offense following the January 21 traffic stop. The badge number 0032 is written immediately underneath Commissioner Byrd's name on the report from D.C. Superior Court, which shows a record of the "no permit" dismissal. Mr. Arnold also indicated to Sergeant Weatherby that two unidentified officers violated his civil rights. Sergeant Weatherby notified plaintiff in writing that he was unable to assist Mr. Arnold without more information, which Mr. Arnold was unable to provide.

incarcerated on drug charges following a raid on his apartment that plaintiff claimed was unlawful. *Id.* The court held that the statute of limitations was tolled since the plaintiff was incarcerated from the time of his arrest up until the time he filed suit. The statute of limitations will not, however, be tolled for a person released from custody and then rearrested on a separate charge. *See Dist. of Columbia v. Tinker*, 691 A.2d 57, 64–5 (D.C.1997) (holding that the statute of limitations begins running immediately upon release from incarceration, and that the statute is not tolled upon re-arrest); *see also Simpson*, 789 F.Supp. at 8 (citation omitted) (holding that "a complainant who is rearrested for unrelated offenses may not, under normal circumstances, tack this second term of imprisonment to the prior sentence in order to continue the tolling").

■ Applying these holdings to the instant case, Mr. Arnold's incarceration on felony gun possession would not prevent the statute of limitations from accruing on January 22, 1996—the day he was released from custody following a traffic stop the previous day. As such, to timely bring claims under 42 U.S.C. § 1983, he must have filed suit by January 22, 1999. The complaint was not filed until June 14, 2001, more than two years late.

Courts have also held, however, that "when a literal application of a state's statute of limitation tolling provision would work an injustice, a federal court has a duty to apply a federal common law interpretation to the provision, especially in cases of civil rights claims." *Simpson*, 789 F.Supp. at 8. In *Simpson*, the court refused to dismiss plaintiff's untimely claims "until the defendants demonstrate[d] that plaintiff was free from incarceration for a sufficient period of time ... such that the 'disability' of imprisonment ... should have been lifted from his rights of action."

*Id.* Sufficient evidence existed to suggest that the plaintiff in *Simpson* was incarcerated throughout the time interval between the events upon which his claim was based, and the otherwise tardy filing of his claim was permitted. *Id.* The court thus found that continuous incarceration justified ignoring strict adherence to the statute of limitations. *Id.*

Unlike the plaintiff in *Simpson*, Mr. Arnold was released from custody for two weeks after the January 21 incident, and was not sentenced on the gun charge for nearly two months after enduring the alleged civil rights violation. He was not incarcerated, like Simpson, continuously during the applicable statute of limitations period. After being released from custody, Mr. Arnold understood his rights. He filed suit against defendants *after* being arrested for the unrelated gun charge, but voluntarily dismissed the case to seek counsel. This effort shows that Mr. Arnold's custodial interaction immediately following the alleged 42 U.S.C. § 1983 violation was sufficiently "lifted from his rights of action" to negate any injustice that might have prevented him from filing suit. *Simpson*, 789 F.Supp. at 8 (citations omitted).

■ This Court in *Williams* acknowledged the possibility of ignoring the strict statutory limitations to prevent injustice under the doctrine of "equitable tolling." *Williams v. Dist. of Columbia*, 916 F.Supp. 1, 2 (D.D.C.1996). In doing so, this Court noted that equitable tolling would not apply "absent some justification for the plaintiff's failure to file timely." *Id.* (citations omitted). Mr. Arnold dismissed his original 42 U.S.C. § 1983 claims in order to seek counsel, but waited more than three years to write Sergeant Weatherby, of MPD Internal Affairs, about investigating the validity of his claims, and even indicated to Sergeant Weatherby that

he intended to seek counsel to pursue the matter further. *See* Complaint, Exhibits E and G. It took plaintiff another two years after this correspondence to file the current lawsuit against defendants. *Id.* Mr. Arnold was aware of his ability to sue defendants, but offers no explanation for why it took him more than five years to do so. Therefore, it is not appropriate to apply equitable tolling in this case.

The case most analogous to the instant motion is *Tinker*. The plaintiff in *Tinker* sued for injuries suffered during the course of an arrest in September 1988. *Tinker*, 691 A.2d at 58. He was immediately incarcerated for possessing a knife at the time of his arrest, and remained incarcerated until August 11, 1989, when he was mistakenly released. *Id.* at 59. He was rearrested five weeks later for a different offense. *Id.* He did not file suit until September of 1991, more than one year after the statute of limitations for assault and battery expired. *Id.* The *Tinker* court held plainly that "an inmate's release from incarceration, whether valid or invalid, irrevocably starts the statute of limitations running as to any cause of action accruing at the time of his or her arrest ... and, crucially for this case, the statute is not tolled again if the inmate is re-arrested." *Tinker*, 691 A.2d at 64 (citing *Burrell v. Newsome*, 883 F.2d 416, 420 (5th Cir.1989); *Kaiser v. Cahn*, 510 F.2d 282, 286 (2d Cir.1974)). The court went on to state that "[a] careful reading of the applicable statute here reveals that the limitations period is tolled only for that period of imprisonment during which the [tort] occurs, not during subsequent periods of incarceration. This is reasonable because once a prisoner is released ... nothing

prevents the plaintiff from commencing his action at that time." *Tinker*, 691 A.2d at 65. Like the plaintiff in *Tinker*, Mr. Arnold sued for injuries suffered during an arrest—on January 21, 1996. The statute of limitations began to run immediately upon his release from custody on January 22, 1996. No tolling occurred following his re-arrest on February 5, 1996[2], because Mr. Arnold had the opportunity to file suit, and in fact seized that opportunity, upon his initial release from custody. He met with the arresting officer on the evening of January 22, 1996, to inquire about retrieving his automobile, and filed suit in February before voluntarily dismissing the action. The *Tinker* court chose a bright line rule to deal with statute of limitations questions, and this Court declines to depart from that ruling in this case. Even if the statute of limitations did not bar plaintiff's claims, however, his case should be dismissed for failure to state a claim upon which relief can be granted.

### D. Failure to state a claim

■ In the alternative, the District of Columbia contends, and the Court finds, that plaintiff's case should be dismissed for failure to state a claim upon which relief can be granted. The District of Columbia is considered a municipality for purposes of 42 U.S.C. § 1983. *Best v. Dist. of Columbia, et al.*, 743 F.Supp. 44, 46 (D.D.C. 1990). In addition, the MPD is not a separate and distinct entity from the District of Columbia since it can neither sue nor be sued. *Hinton v. Metro. Police Dep't, Fifth Dist.*, 726 F.Supp. 875, 875 (D.D.C.1989).

■ Plaintiff's claim for $2.5 million in punitive damages must be dismissed

---

**2.** It is unclear from the pleadings whether Mr. Arnold was incarcerated following his re-arrest on February 5, 1996, but the Court views the facts in favor of plaintiff on a motion to dismiss, and assumes that plaintiff has been incarcerated from February 5, 1996, up until the present day.

because punitive damages are not recoverable against a municipality in a 42 U.S.C. § 1983 suit absent extraordinary circumstances. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). The court in *Daskalea* determined that extraordinary circumstances exist when taxpayers are directly responsible for determining the policies that cause the plaintiff's injuries, or where a municipality or its policymakers have intentionally adopted the policy that injured the plaintiff. *Daskalea v. Dist. of Columbia,* 227 F.3d 433 (D.C.Cir.2000). Mr. Arnold does not allege that the officers who assaulted him did so pursuant to MPD policy, and therefore cannot recover punitive damages from the District of Columbia.

■■■ Moreover, the District of Columbia cannot be held liable for any other damages to Mr. Arnold unless he claims that his injuries resulted from a specific municipal custom or policy. *See Monell v. New York City Dep't of Soc. Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that municipalities are not liable under 42 U.S.C. § 1983 unless an official policy or custom of the municipality is "the moving force of the constitutional violation"); *see also Bethesda Lutheran Homes and Services, Inc. v. Leean,* 154 F.3d 716, 719 (7th Cir. 1998) (holding that a municipality is not vicariously liable under § 1983 for the torts of its employees, and the plaintiff must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself in order to recover damages from the municipality). The Supreme Court has held that policy or custom implies a deliberate choice by *policymaking officials* responsible for the subject matter in question. *See Oklahoma v. Tuttle,* 471 U.S. 808, 823, 105 S.Ct. 2427, 85 L.Ed.2d

791 (1985). There also must be some causal link between the *unconstitutional* official policy or policymaker's decision, and the injuries suffered by the plaintiff. *Id.; see also Dorman v. Dist. of Columbia,* No. CIV.A.85–3587, 1987 WL 12136, at *1 (D.D.C. Jun.3, 1987). For example, in *Monell* the plaintiff's injury was the direct result of a Department of Social Services policy that explicitly compelled pregnant employees to take mandatory leaves of absence before such leaves were required for medical reasons. *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. The only evidence necessary for the plaintiff to provide in that case was the actual policy statement. In contrast, the plaintiff in *Tuttle* was the widow of a man shot to death by an Oklahoma City police officer. *Tuttle,* 471 U.S. at 822, 105 S.Ct. 2427. She claimed that her husband's death was the result of "inadequate training" by the police department. *Id.* In that case the Supreme Court held that Tuttle's claim was difficult to prove "unless evidence be adduced which proves that the inadequacies resulted from conscious choice—that is, proof that the policymakers deliberately chose a training program which would prove inadequate." *Id.* at 823, 105 S.Ct. 2427. In discussing incidents where a person's rights are violated by a municipality through its employees, the Supreme Court noted that: "Obviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm inflicted by a municipal official; for example, [Officer] Rotramel would never have killed Tuttle if Oklahoma City did not have a 'policy' of establishing a police force." *Id.* In sum, a single civil rights violation, minus further evidence that municipal policy dictated the violation, is not sufficient to recover damages from a municipality. *Id.; see also Sarus v. Rotundo,* 831 F.2d 397, 402 (2d Cir.1987) ("[A]bsent

more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a policy may not ordinarily be inferred from a single incident of illegality"); *but see Robinson v. Solano County,* 218 F.3d 1030, 1038 (9th Cir.2000) (recognizing 42 U.S.C. § 1983 claims against municipalities in California arising out of a single constitutional violation by a municipal employee).

Mr. Arnold's claims, if true, amount to a single encounter with two MPD officers who assaulted plaintiff both at a traffic stop, and at the station following plaintiff's custodial arrest. Plaintiff does not allege that the two officers that violated his rights were acting pursuant to MPD policy, and he does not allege that the officers themselves were policymakers deliberately choosing to act in an unconstitutional manner. Mr. Arnold's 42 U.S.C. § 1983 suit against the District of Columbia must therefore be dismissed for failure to state a claim.[3]

## III. CONCLUSION

The statute of limitations for Mr. Arnold's claims began to run the moment he was released from custody on January 22, 1996. Mr. Arnold did not file suit until June 14, 2001. Subsequent incarceration for offenses that are unrelated to the events leading up to plaintiff's current suit does not toll the time limit. Mr. Arnold exhibited knowledge of his right to sue, but failed to exercise that right within the proper time frame. For this reason alone, plaintiff's claim must be dismissed. Even if the Court did not dismiss the complaint based on the statute of limitations, plaintiff's claim would still be dismissed because plaintiff has failed to state a claim upon which relief may be granted[4]. Mr. Arnold has not alleged that the officers who violated his civil rights were acting pursuant to a policy or custom of the District of Columbia. Nor has he alleged that these officers had policymaking authority, or were inadequately trained or supervised by the District of Columbia. The Supreme Court has expressly held that a municipality may not be held liable under 42 U.S.C. § 1983 unless plaintiff's injuries were caused by a policy or custom of the municipality. The Court must, therefore, dismiss the case because Mr. Arnold has failed to state a claim.

**3.** In order to defeat defendants' motion to dismiss, Mr. Arnold would have to do more than simply allege that an MPD policy, or inadequate training of its officers, caused his injuries. He would have to allege facts that could give rise to an inference that such·a policy or custom proximately caused his injuries.

**4.** While the Court assumed for purposes of the instant motion that the facts alleged in the complaint are true, it is worth noting the multitude of inconsistencies in plaintiff's claims. In the original complaint, plaintiff claimed that the unreturned car was a 1989 Buick sedan, then claimed it was a 1993 Oldsmobile Cutlass Supreme in a subsequent letter to Sergeant Weatherby of Internal Affairs for the MPD. Plaintiff originally claimed he had suffered a broken left shoulder in the altercation with D.C. Metropolitan Police officers, but later alleged a broken collar bone. Plaintiff admits to being shot in the course of being robbed just two days prior to the January 21 incident, but cites the January 21 incident as the source of his injuries. Plaintiff claimed that he was quickly thrown from the car and later attacked at the station by two unknown officers who had removed their name tags and badges. In the April 1999 letter to Sergeant Weatherby, though, Mr. Arnold alleged that he saw the name J. Byrd with the badge number 0032 on the arresting officer. The badge number 0032 is written immediately underneath Commissioner Byrd's name on the report from D.C. Superior Court, which shows a record of the "no permit" dismissal. Perhaps it is from this record that plaintiff "recalled" the January 21 incident. *See* Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss.

A separate order consistent with this opinion shall issue this date.

## ORDER

Consistent with the Memorandum Opinion issued this date, it is hereby

ORDERED that defendants' motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim upon which relief may be granted, is GRANTED. This action now stands DISMISSED with prejudice. With respect to the two unnamed police officers, who were never identified or served with process, this action now stands DISMISSED without prejudice.

SO ORDERED.