**Shirley BOLTON, Appellant,**

v.

**BERNABEI & KATZ, PLLC, Appellee.**

**Nos. 05–CV–642, 05–CV–860.**

District of Columbia Court of Appeals.

Argued May 31, 2006.

Decided July 31, 2008.

---

Michael P. Coyle, for appellant.

David P. Durbin, with whom Joseph S. Ferretti, Washington, and Ari M. Wilkenfeld were on the brief, for appellee.

Before RUIZ, GLICKMAN, and FISHER, Associate Judges.

FISHER, Associate Judge:

Appellant Shirley Bolton ("Bolton") asks us to reverse orders of the Superior Court granting summary judgment to appellee Bernabei & Katz, PLLC ("B & K"). We affirm those portions of the judgment which confirmed an arbitration award and dismissed Bolton's counter-complaint, but remand for further consideration of Bolton's motion to amend or clarify her answer.

## I. Factual Background

This appeal was generated by B & K's attempts to enforce an arbitration award. In December 1998, the parties entered into a retainer agreement governing B & K's representation of Bolton, who was contesting the failure of the United States Army to promote her to the rank of Colonel. In a letter dated November 11, 1999, B & K terminated its representation, citing Bolton's failure to pay the retainer and accruing legal fees. B & K reaffirmed the termination in a letter dated February 21, 2000, and some time later returned Bolton's file to her.

Meanwhile, Bolton repeatedly failed to pay B & K's legal fees. Ultimately, she retained new counsel, James C. Strouse, Esquire, who disputed the fee totals and raised the possibility that B & K was guilty of negligence and malpractice. On July 26, 2001, acting in response to Bolton's request for arbitration and pursuant to the arbitration provision of the retainer agreement, B & K petitioned the Attorney/Client Arbitration Board ("ACAB") of the District of Columbia Bar to arbitrate the fee dispute. ACAB accepted the dispute on July 31, 2001, and conducted an arbitration hearing on October 2, 2002. ACAB ruled in favor of B & K and ordered Bolton to pay "$5,268 for legal fees owed." Bolton refused to pay the award, however, prompting B & K to initiate the litigation which brings the parties here.

## II. Procedural Background

On December 11, 2002, B & K began the process of enforcing its October 3, 2002, arbitration award by filing a Motion to Enroll in the Superior Court.[1] Acting pro

---

1. Although B & K asked the court to "enroll" the arbitration award, the District of Columbia Uniform Arbitration Act ("DCUAA") does not use that term. See D.C.Code §§ 16–4301 to –4319 (2001). Except when quoting the court or one of the parties, we will use the term "confirm" and its variants. See D.C.Code § 16–4313 (referring to "an order

se, Bolton filed her Answer on March 11, 2003. Almost six months later, on September 5, 2003, Bolton filed a counter-complaint against B & K for malpractice. On April 5, 2004, the court granted B & K's Motion for Summary Judgment on the Counter–Complaint, concluding that the "[three year] statute of limitations for legal malpractice" began when Bolton "knew of possible legal malpractice in July 2000" and thus expired before "the Counter–Complaint was filed in Sept. 2003[.]"

Six months later, on October 8, 2004, Michael P. Coyle, Esquire, entered an appearance on Bolton's behalf and, on November 19, 2004, he filed a Motion to Amend, or in the Alternative, Clarify (Bolton's) Answer to the motion to confirm. This motion sought to "amend[ ][the] Answer to include an 'omitted' Counterclaim" or, in the alternative, to obtain "an order from the [c]ourt clarifying that her original Answer, filed *pro se* in this matter does, in fact, allege a Counterclaim against [B & K]." The court denied this motion on December 14, 2004.

On February 18, 2005, B & K filed a Motion for Summary Judgment on its motion to confirm. Bolton opposed that motion and filed her own Cross–Motion for Summary Judgment. The court granted B & K's motion and denied Bolton's cross-

motion on June 30, 2005. The court refused to vacate the arbitration award, finding that "[t]here is no evidence that [ ] ACAB excluded any material evidence that prejudiced [Bolton's] rights, or that the arbitrators disregarded the law." The court also found that "there is no evidence that [Bolton] has paid [B & K]" and thus "[B & K] has a right to have the arbitration award enrolled [by] this Court." For those reasons, the court "confirmed" and "enrolled" the arbitration award.

### III. Confirmation of the Arbitration Award

■ Bolton concedes that she has not paid the award, but she challenges the confirmation (and the award) by attacking the arbitration proceedings. She alleges ACAB "refused to hear evidence material to the controversy," D.C.Code § 16–4311(a)(4) (2001), when it denied her request to "read from a prepared statement" and refused to admit a piece of evidence. Bolton also claims that the hearing was "procedurally defective" because she "never formally agreed to arbitrate the amount ultimately before [ACAB]." We construe this last claim to be an argument that vacation is warranted because the "arbitrators exceeded their powers[.]" D.C.Code § 16–4311(a)(3).[2]

confirming, modifying or correcting an award ..."); Super. Ct. Civ. R. 70–I(b) (governing confirmation of arbitration awards).

The DCUAA has been repealed effective July 1, 2009, and will be replaced by the Revised Uniform Arbitration Act, codified at D.C.Code §§ 16–4401 to –4432. *See* Arbitration Act of 2007, D.C. Law 17–111, § 3, 55 DCR 1847.

**2.** We reject Bolton's suggestion that the trial court lacked jurisdiction to grant summary judgment on the merits and confirm the award. In an April 13th Order, the trial court initially granted B & K's motion for summary judgment on the ground that Bolton's motion to vacate the arbitration award was untimely.

In response, and within ten days, Bolton moved to reconsider, pointing out an error in the trial court's calculation of time. Before the trial court ruled on this motion to reconsider, however, and in an abundance of caution, Bolton timely noted an appeal of the April 13th Order. She now argues that the trial court had no authority to vacate its prior order or to grant summary judgment on a different rationale because her notice of appeal divested the court of jurisdiction.

Despite its caption, Bolton's motion to reconsider, filed within ten days of the April 13th Order, is properly construed as a timely motion to vacate, alter, or amend the judgment. *See* D.C.App. R. 4(a)(4)(A)(iii); *see also*

"Judicial review of an arbitrator's decision is extremely limited, and a party seeking to set it aside has a heavy burden." *Lopata v. Coyne*, 735 A.2d 931, 940 (D.C.1999) (internal citations omitted). *See* D.C.Code § 16–4311(a) (2001) (limiting grounds for vacating an arbitration award).[3] While we review a trial court's judgment confirming an arbitration award *de novo*, " '[we] will not set aside an arbitration award for errors of either law or fact made by the arbitrator.' " *Dolton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 935 A.2d 295, 298 (D.C.2007) (internal citations omitted). This limited review

serves "to attain a balance between the need for speedy, inexpensive dispute resolution, on the one hand, and the need to establish justified confidence in arbitration among the public, on the other." *Brandon v. Hines*, 439 A.2d 496, 509 (D.C.1981) (internal quotation marks and citations omitted).[4]

### A. Bolton's Evidentiary Challenges

Bolton argues that the ACAB arbitrators made two erroneous evidentiary rulings that warrant vacation of the award under § 16–4311(a)(4). First, she contests ACAB's direction that, when appearing as

---

3. *Nichols v. First Union Nat'l Bank*, 905 A.2d 268, 272 n. 5 (D.C.2006) ("[t]he nature of a motion is determined by the relief sought, not by its label or caption.") (internal quotation marks and citation omitted). Rule 4 makes it clear that the trial court retains jurisdiction over this type of motion even after an appeal is noticed. *See* D.C.App. R. 4(a)(4)(B)(ii) ("If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."); *see also Carter v. Cathedral Ave. Coop., Inc.*, 532 A.2d 681, 683–84 (D.C.1987) ("the pending motion ... rendered premature the filing of the notices of appeal ... [and where] the notice of appeal is a premature act ... the trial court may proceed with pending matters in the case.").

3. D.C.Code § 16–4311(a) reads as follows:
   (a) Upon application of a party, the Court shall vacate an award where:
   (1) The award was procured by corruption, fraud or other undue means;
   (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
   (3) The arbitrators exceeded their powers;
   (4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the pro-

visions of section 16–4315, as to prejudice substantially the rights of a party; or
   (5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 16–4312 and the party did not participate in the arbitration hearing without raising the objection; but the fact that the relief was such that it could not or would not be granted by a Court of law or equity is not ground for vacating or refusing to confirm the award.

4. We have sometimes stated that we may vacate an award if the arbitrators "manifestly disregarded the law," *see, e.g., Dolton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 935 A.2d 295, 298 (D.C.2007), but it is not clear that we have any such authority that is independent of, or broader than, the statutory authority granted to us in the District of Columbia Arbitration Act, D.C.Code § 16–4311(a) (2001). *See Tauber, M.D. & Assocs. v. Trammell Crow Real Estate Servs.*, 738 A.2d 1214, 1217 n. 5 (D.C.1999) ("refus[ing] to extend the basis for considering vacation of an arbitrator's award in this manner"). In a recent case, the United States Supreme Court suggested that the phrase "manifest disregard" might have entered federal case law as a shorthand reference to the statutory authority granted by the Federal Arbitration Act, 9 U.S.C. § 10(a) (2000). *See Hall Street Assocs., LLC v. Mattel, Inc.*, —— U.S. ——, 128 S.Ct. 1396, 1404, 170 L.Ed.2d 254 (2008). We need not resolve that question in this case, however, because Bolton does not assert that the arbitrators manifestly disregarded the law.

a witness in her own case, she must actually testify, rather than simply read a fifteen-page prepared statement. Second, she argues that ACAB's "refus[al] to accept [a piece of] documentary evidence" was "a procedural error." In making these related arguments, Bolton misapprehends the scope of our review.

Conducting the intensive review that Bolton suggests would force us to "superintend [the] arbitration proceedings." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir.1997) (discussing the limits of review where a party claims the arbitrator "refus[ed] to hear evidence pertinent or material to the controversy").[5] But we are neither required nor authorized "to comb the record for technical errors in the receipt or rejection of evidence by arbitrators...." *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3d Cir.1968). Rather, "[o]ur review is restricted to determining whether the procedure was fundamentally unfair." *Tempo Shain Corp.*, 120 F.3d at 20. *See id.* ("[E]xcept where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review.") Because an arbitrator is "not required to hear all the evidence proffered by a party," we only evaluate whether the arbitrator " '[gave] each of the parties to the dispute an adequate opportunity to present its evidence and argument.' " *Id.* (internal citation omitted). *See Lessin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 375 U.S.App. D.C. 317, 322, 481 F.3d 813, 818 (2007) (" '[e]very failure of an arbitrator to receive relevant evidence does not constitute misconduct requiring vacatur of an

arbitrator's award.' ") (quoting *Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.1985)).

Bolton has failed to demonstrate that ACAB's rulings violated fundamental fairness or that she suffered prejudice of a magnitude that would warrant vacatur. Bolton was represented by a lawyer at the arbitration hearing and she had ample opportunity to present her case through testimonial and documentary evidence. Bolton has not established that her testimony differed materially from the prepared statement, and she has only pointed to one piece of evidence that ACAB refused to consider, a letter from herself to B & K, dated March 22, 1999. In short, we do not attempt to review ACAB's evidentiary rulings because Bolton has not persuaded us that (even assuming those rulings were, in some sense, erroneous) they deprived her of a fundamentally fair hearing.

### B. Bolton's Challenge to ACAB's Authority

Bolton argues that "the proceedings before [ACAB] were procedurally defective" because she "never formally agreed to arbitrate the amount ultimately before [ACAB]." Although she never identifies the statutory basis for her challenge, it amounts to a claim that the ACAB "arbitrators exceeded their powers." D.C.Code § 16–4311(a)(3) (2001). Considering, however, that Bolton explicitly agreed to arbitrate "any fee dispute" arising between the parties when she signed the retainer agreement in December 1998, that she was the first party to invoke arbitration,[6] that

---

**5.** " '[F]ederal court decisions construing and applying the federal arbitration act may be regarded as persuasive authority in construing and applying the corresponding provisions of the District of Columbia arbitration act....' " *Tauber, M.D. & Assocs.*, 738 A.2d at

1217 n. 6 (quoting *Hercules & Co. v. Beltway Carpet Serv.*, 592 A.2d 1069, 1073 (D.C.1991)).

**6.** In a letter to B & K dated May 23, 2001, Bolton's attorney invoked the arbitration clause, stating that his client "wishes the mat-

she was kept informed of the amount of fees in dispute throughout the proceedings,[7] and that she fully participated in the arbitration, we reject her challenge.[8]

Bolton rests her entire argument on ACAB Rule of Procedure 9, which requires an agreement to arbitrate. Rule 9(2) provides that when, as here, "the petition is filed by a lawyer, [ACAB] will send the client a copy of these rules and an agreement form. The agreement to arbitrate will set out the amount in dispute." Rule 9(2)(a) states that "[i]f the client signs the form and returns it to [ACAB] or [ACAB] receives any other binding consent by the client, the arbitration process will begin." However, Rule 9(2)(c) provides alternative authority: "ACAB will enforce an attorney/client agreement to arbitrate a fee dispute that is entered into prior to the dispute [but] only if the pre-

dispute agreement complies with Legal Ethics Opinion 218." [9]

The retainer agreement contains an arbitration clause: "If any fee dispute arises which can not be resolved between the Firm and the Client, the parties agree that all such disputes shall be submitted to binding arbitration before the District of Columbia Bar's Attorney–Client Arbitration Board ("ACAB")." And it is clear that ACAB relied upon this agreement as the basis of its authority. In a letter dated July 31, 2001, ACAB informed Bolton's attorney that it had "examined the fee agreement and ha[d] determined that it satisfies the requirements of the ACAB Fee Arbitration Service Rules of Procedures and Legal Ethics Opinion 218." There was no need to obtain Bolton's signature on an agreement form because she

ter be referred to the District of Columbia Bar's Attorney–Client Arbitration Board (ACAB) as agreed upon under paragraph 14 of the signed retainer agreement dated December 31, 1998." One month later, Bolton's attorney wrote: "My client chooses the DC fee arbitration board as required in the fee agreement."

7. Once ACAB accepted the dispute, it sent Bolton's attorney a copy of B & K's "Request for Arbitration," which clearly states that B & K "seek[s] relief in the amount of $12,315.06," and a copy of B & K's written explanation of how it calculated that amount using the interest rate set forth in the retainer agreement. Finally, when B & K informed ACAB that it wanted to increase the amount of relief sought, due to the accrual of additional interest, it calculated the new amount using the same formula and sent a copy of its request to Bolton's attorney.

Bolton voluntarily chose Strouse as her attorney and " 'cannot now avoid the consequences of the acts or omissions of this freely selected agent.' " *Goldschmidt v. Paley Rothman Goldstein Rosenberg & Cooper, Chartered,* 935 A.2d 362, 369 (D.C.2007) (quoting *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). She is therefore " 'bound by the acts of [her] lawyer-

agent and is considered to have notice of all facts, notice of which can be charged upon [her] attorney.' " *Id.*

8. *See Lopata v. Coyne,* 735 A.2d 931, 937 (D.C.1999) ("It is well-settled that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result.... Similarly, [o]nce a claimant submits to the authority of the arbitrator and pursues arbitration, he cannot suddenly change his mind and assert lack of authority.") (internal quotation marks and citations omitted).

9. This opinion sets forth three requirements that must be met before a "fee agreement providing for mandatory arbitration of fee disputes" can be "ethically permissible." D.C. Bar Legal Ethics Opinion No. 218, "Retainer Agreement Providing for Mandatory Arbitration of Fee Disputes Is Not Unethical" (adopted June 18, 1991). Specifically, (1) the agreement must "inform[ ] the client in writing that counseling and a copy of the ACAB's rules are available through the ACAB staff," (2) the lawyer must "encourage the client to contact the ACAB for counseling and information prior to deciding whether to sign the agreement," and (3) "the client must consent in writing to the mandatory arbitration." *Id.*

was bound to arbitrate under the retainer agreement, regardless of the amount sought by B & K.

## IV. The Malpractice Claim

The remaining issue is whether Bolton timely asserted a claim of malpractice. It is undisputed that she read her file by the end of July 2000 and, at that time, discovered letters that provided the basis of her malpractice claim. The statute of limitations for legal malpractice is three years, *Wagner v. Sellinger*, 847 A.2d 1151, 1154 (D.C.2004) (citing D.C.Code § 12–301(8) (2001)), and we have held that it starts running once the party alleging injury discovers the basis of the claim. *Peters v. Riggs Nat'l Bank, N.A.*, 942 A.2d 1163, 1169 (D.C.2008) (" 'Under the discovery rule, a particular cause of action accrues when the [injured party] knows or through the exercise of due diligence should have known of the injury.' ") (internal citation omitted). Although these legal principles are well-settled, there is no doubt that litigation of the statute of limitations issue was made difficult by the fact that Bolton sometimes represented herself and at other times was represented by a succession of three different attorneys.

Bolton filed her *pro se* Answer to B & K's motion to confirm on March 11, 2003. However, she never attempted to assert anything denominated as a complaint or a counterclaim until her attorney filed a counter-complaint for malpractice in September 2003. Granting B & K's mo-

tion for summary judgment with respect to the counter-complaint, the trial court found that the statute of limitations began to run in July 2000 and held that this pleading, filed more than three years later, was obviously untimely.[10] Over six months later, Bolton's new counsel filed a Motion to Amend, or in the Alternative, Clarify [Bolton's] Answer.

This motion sought to "amend[ ][the] Answer to include an 'omitted' Counterclaim ... [p]ursuant to Super. [Ct. Civ.] R. 13(f)." It asserted that the counterclaim would be "timely for two reasons[,] ... it 'relates back' to her original Answer pursuant to Super. [Ct. Civ.] R. 15(c) ... [and] since [it] is based on the same transaction that is the basis for B & K's Motion to Enroll, ... the statute of limitations ... has been tolled." In the alternative, the motion sought "an order from the [c]ourt clarifying that [Bolton's] original Answer ... does, in fact, allege a Counterclaim...." The trial court denied this motion and, in doing so, rejected the Rule 13(f) argument, but it did not address Bolton's assertion that a portion of her Answer should be treated as a counterclaim.

If Bolton's Answer is treated as properly asserting a counterclaim for malpractice, then that claim would be timely because it was filed on March 11, 2003. Although the Answer is somewhat difficult to follow, Bolton does explicitly and repeatedly accuse B & K of "negligence" and "malpractice." She alleges that B & K "violated the Rules of [P]rofessional

10. We agree with the trial court that "[t]he continuous representation rule, ... does not provide[ ] Bolton a harbor from the statute of limitations" because B & K's representation of Bolton ended, at the latest, "in May 2000 [when] Bolton's files were returned to her." Bolton also raises a new argument for the first time on appeal—that B & K's August 9, 2000, letter "caused her to believe that B & K had done nothing wrong" and, for that rea-

son, the statute of limitations should be deemed tolled until she consulted another attorney. We decline to consider this argument because, "except in exceptional circumstances that are not present here[,] ... [p]oints not raised and preserved in the trial court will not be considered on appeal[.]" *Oparaugo v. Watts*, 884 A.2d 63, 75 (D.C. 2005).

Conduct by not communicating critical information that adversely affected the outcome [of her] case and caused [her] to suffer financial damages." She also asserts that B & K violated District of Columbia Rule of Professional Conduct 1.1 (Competence) and that "the standards of acceptable legal practice were not met in [her] case" because B & K "failed to research the law and apply the correct statute...." In addition, Bolton claims that she "lost significant income and future retirement and disability benefits because of the negligent actions on the part of [B & K]." She seems to make these allegations not merely to defeat B & K's motion to confirm, but also to obtain affirmative, albeit modest, monetary relief. Specifically, Bolton not only asked that the arbitration award be vacated but also requested a "[r]efund of legal fees [she] already paid to [B & K] in the amount of $5,075.00 [plus interest]."

On the other hand, Bolton also treats these allegations as a basis for resisting collection of the arbitration award (although, for that purpose, they seem to be legally irrelevant). Her answer asserts that "[b]ecause of the professional negligence and legal [mal]practice as outlined in this document[,] additional legal fees sought by [B & K] in this action are not valid." In the prayer for relief, Bolton only asks for a refund of the legal fees already paid—$5,075.00 plus interest. She does not seek relief in an amount that would compensate her for the significant damages that she asserts were caused by B & K's malpractice. There is a big leap between this modest claim and her later counterclaim for $500,000 or more in damages.

■ Super. Ct. Civ. R. 8(a) sets forth the minimum requirements for pleading a "claim for relief." "All that is required when we consider the sufficiency of the [pleading] is 'a short and plain state-

ment of the claim showing that the pleader is entitled to relief.' " *In re Curseen,* 890 A.2d 191, 193–94 (D.C.2006) (quoting Super. Ct. Civ. R. 8(a)(2)). "Such a statement must simply 'give the [opposing party] fair notice of what the [pleader's] claim is and the grounds upon which it rests.' " *Id.* at 194 (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Further, we follow the "simple guide" of Super. Ct. Civ. R. 8(f) that "all pleadings shall be so construed as to do substantial justice." *District of Columbia v. Beretta, U.S.A., Corp.,* 872 A.2d 633, 655 (D.C.2005) (quoting *Conley,* 355 U.S. at 48, 78 S.Ct. 99) (internal quotation marks omitted).

■ Here, the relevant portion of Bolton's Answer clearly "satisfies the requirements of Rule 8(a) because it gives [B & K] fair notice of the basis for [her malpractice claim]." *In re Curseen,* 890 A.2d at 194 (assessing whether complaint adequately pled a claim for legal malpractice). In her Answer, Bolton "clearly assert[s] that [B & K] owed [her] a duty of care, [she] allege[s] breaches of that duty, and [she] claim[s that she has] been injured as a result of those breaches." *Id.* The problem is, however, that this malpractice claim is not identified as a counterclaim, nor is it set apart from the other denials and defenses articulated in the Answer. Considering that the primary purpose of an answer is to "state in short and plain terms the party's defenses to each claim asserted," Super. Ct. Civ. R. 8(b), it comes as no surprise that a busy trial court could read Bolton's *pro se* Answer to assert "malpractice" as an affirmative defense, and not as an independent counterclaim.

Super. Ct. Civ. R. 8(c) was designed to cover a situation such as this. *See Backus v. Veterans Coop. Housing Ass'n,* 96 A.2d 513, 516 (D.C.1953) (counterclaim erroneously designated as defense in answer will

be considered). Rule 8(c) provides that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the Court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Relying on this rule, we have held that the designation of a claim "as a 'defense' in [an] answer rather than as a counterclaim should not [preclude] its consideration." *Entrepreneur Ltd. v. Yasuna*, 498 A.2d 1151, 1164–65 (D.C.1985) (internal citations omitted).[11] Similarly, we hold that Rule 8(c) gives the trial court the authority to take what may appear to be simply an affirmative defense in Bolton's Answer and treat it as a counterclaim for malpractice.

It appears that this is the relief Bolton sought when she asked the trial court for an order "clarifying that her original Answer ... does, in fact, allege a Counterclaim...." Her supporting memorandum explained that she was requesting the court to "find that her Answer already alleges a counterclaim against B & K as drafted." She pointed out that the Answer "alleged several negligent acts by B & K in their representation of Ms. Bolton and clearly sought affirmative relief from B & K." Most likely due to the confusing manner in which this issue had been litigated, as well as Bolton's failure to cite Super. Ct. Civ. R. 8(c), the trial court did not address this request.

The authority granted by Rule 8(c) to treat a defense as a counterclaim "on terms, if justice so requires," calls for an exercise of discretion by the trial court.[12] Because the court did not address this issue, and because it would be inappropriate for us to exercise discretion with respect to this matter,[13] we vacate the order denying Bolton's Motion to Amend, or in the Alternative, Clarify Her Answer, and remand for a ruling on this aspect of

---

**11.** *See Reiter v. Cooper*, 507 U.S. 258, 263, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993) ("it makes no difference that petitioners may have mistakenly designated their counterclaims as defenses, since [Fed.R.Civ.P.] 8(c) provides [a remedy]"); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 3d § 1275, at 619, 622 (3d ed.2004) ("when the defendant asserts matter as a defense to the plaintiff's claim that is legally insufficient to constitute an affirmative defense, but nonetheless could serve as an independent counterclaim, the district court may relabel the defense as a counterclaim.... The misdesignation provision in Rule 8(c) reflects the conscious attempt by the draftsman to ignore pleading technicalities; it also promotes the liberality with which courts generally construe pleadings under the federal rules."); *see also* Super. Ct. Civ. R. 8(f) ("All pleadings shall be so construed as to do substantial justice."); *cf. Franco v. Nat'l Capital Revitalization Corp.*, 930 A.2d 160, 170 (D.C.2007) (irrespective of the title, when assessing the pleader's affirmative defense, the court should also consider the factual allegations set forth in the pleader's dismissed counterclaims).

**12.** *See Amoco Oil Co. v. Gomez*, 379 F.3d 1266, 1276 (11th Cir.2004) ("[I]n reviewing a district court's denial of [a] Rule 8(c) motion, we believe the rule's use of the phrase 'justice so requires' calls for abuse of discretion review") (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 664 (9th Cir.1999) ("[W]e have held that a district court's [Rule 8(c)] decision[ ] with regard to treatment of affirmative defenses is reviewed for an abuse of discretion")); *Berkshires, L.L.C. v. Sykes*, 127 P.3d 1243, 1249 (Utah App.2005) ("[T]he district court's decision to redesignate an affirmative defense as a counterclaim is discretionary") (citing 2 James Wm. Moore, Moore's Federal Practice § 8.08[7] (3d ed. 2005) ("A court is not required to redesignate in all circumstances, however. The determination of whether to redesignate a defense ... in this way is within the district court's discretion.")).

**13.** "The parties ... are entitled to have the trial judge exercise [his] discretion, unfettered by erroneous legal thinking[;] ... they need not settle for the substituted judgment of an appellate court that would sustain the ruling on a plausible, alternative ground without benefit of all the data ... that inherently go into a discretionary ruling.... Were an appellate court to substitute its own judgment, the

appellant's motion.[14] We note, however, that the issue of redesignation under Rule 8(c) has not produced much by way of precedent in our jurisdiction and that the trial court may find it useful to consider the factors utilized by other jurisdictions in their evaluation of Rule 8(c) motions.[15] Considering that we have held "[Super. Ct. Civ. R.] 8 must be read in light of [Super. Ct. Civ. R.] 15(a)," and that the

phrase "if [or when] justice so requires" appears in both Rules 8(c) and 15(a), the factors considered by a trial court when evaluating a Rule 15(a) motion to amend may be equally relevant in the evaluation of a Rule 8(c) motion to redesignate.[16]

■ Because we are remanding for an exercise of discretion with respect to the redesignation branch of Bolton's motion,

court would rationalize a result which the trial court itself, properly informed of the law, might not have reached, given factors ... which the appellate court could not possibly perceive." *Wright v. United States*, 508 A.2d 915, 919–20 (D.C.1986) (internal citations omitted).

**14.** *See Gibson v. Freeman*, 941 A.2d 1032, 1036 (D.C.2008) (vacating the order appealed from and remanding the case so that the trial court can conduct a renewed exercise of discretion) (citing *Wagshal v. Rigler*, 711 A.2d 112, 114 (D.C.1998)); *Packheiser v. Miller*, 875 A.2d 645, 648 (D.C.2005) (remanding so that the trial court could make an "informed exercise of discretion ... undertaken with a proper appreciation of all relevant factors, including the range of such discretion") (internal citations and quotation marks omitted).

**15.** *See Berkshires, L.L.C.*, 127 P.3d at 1250 (factors to consider include whether the other party received sufficient notice and an opportunity to address the issue, if the pleadings state a claim under Rule 8(a), whether the request is timely, justifiable, and without undue prejudice to the opposing party); 3 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 13.91 (3d ed. 2005) ("One court has held that in light of the liberal pleading [r]ules it is permissible to label a response to a plaintiff's cause of action as both an affirmative defense and a counterclaim, (*Dubied Mach. Co. v. Vermont Knitting Co.*, 739 F.Supp. 867, 871 (S.D.N.Y.1990)), ... [.] However, if a response fails to give the opposing party fair notice, a court is less likely to redesignate an improperly labeled pleading.") (citing *Shelter Mut. Ins. Co. v. Public Water Supply Dist. No. 7*, 747 F.2d 1195, 1197–98 (8th Cir.1984)); *see also Amoco Oil Co.*, 379 F.3d at 1275–76 (endorsing the district court's consideration of timeliness, delay, and judicial efficiency when evaluating a Rule 8(c) request); *389 Orange St. Partners*, 179 F.3d at 665 (stating

that a Rule 8(c) request should not "impose an onerous burden on litigants ... [all it requires is] some timely legal argument ... that his mistakenly designated cross-claims were actually affirmative defenses ...").

**16.** "Rule 8 must be read in light of Rule 15(a), which provides that parties may amend their pleadings with leave of court after a responsive pleading is filed, and that such leave 'shall be freely given when justice so requires.' ... '[D]elay—even lengthy delay—by itself will not usually provide sufficient ground for refusal to allow an amendment' ... [the issue is] whether the delay resulted in prejudice to the opposing party." *District of Columbia v. Tinker*, 691 A.2d 57, 60–61 (D.C. 1997) (internal citations omitted); *see Sherman v. Adoption Center of Washington, Inc.*, 741 A.2d 1031, 1037–39 (D.C.1999) (discussion of trial court's " 'wide discretion' " when deciding a Rule 15(a) motion to amend); *Johnson v. Fairfax Village Condo. IV Unit Owners Ass'n*, 641 A.2d 495, 501 (D.C.1994) (list of factors that should guide the trial court's exercise of discretion over a motion to amend; stating "the policy favoring resolution of cases on the merits creates a virtual presumption that a court should grant leave to amend where no good reason appears to the contrary") (internal quotation marks and citations omitted); 2 JAMES WM. MOORE, MOORE'S FEDERAL PRACTICE § 8.08[3] (3d ed. 2005) ("A motion to amend will be denied if the claimant would be unduly prejudiced. Prejudice will not be found if the amendment does not surprise the opposing party ..."); *see also Flax v. Schertler*, 935 A.2d 1091, 1105 (D.C.2007) (discussing what constitutes sufficient prejudice to justify denying a motion to amend); *Berkshires, L.L.C.*, 127 P.3d at 1250 ("[f]actors pertinent to a motion to amend may also be useful" in evaluating a Rule 8(c) motion to redesignate).

we also direct the trial court to take a fresh look at its application of Super. Ct. Civ. R. 13(f) (should that issue remain relevant). Under Rule 13(f), "[l]eave to file an omitted counterclaim beyond ·the proper time limitations should be granted where the court, in its discretion, determines that the omission is the result of 'oversight, inadvertence, or excusable neglect,' or where justice so demands." *Bronson v. Borst,* 404 A.2d 960, 963 (D.C. 1979) (quoting and paraphrasing Super. Ct. Civ. R. 13(f)).

Having previously ruled that the belated counter-complaint was untimely, the trial court sensibly found that "[t]his is not an instance in which no counterclaim was asserted because of oversight or neglect; on the contrary, it has been asserted and rejected." It then concluded that Rule 13(f) is "not applicable" to Bolton's request, ended its analysis, and declined to grant leave to amend. The court did not decide whether "justice require[d]" that it grant leave to amend.

▮▮▮▮▮ The Rule 13(f) grounds considered by the trial court focus on *how* or *why* the counterclaim came to be omitted, but the language "when justice requires" provides the court with an alternative basis for granting leave to amend. When evaluating whether "justice requires" leave to amend, the trial court should conduct a distinct analysis, independent of these other grounds. *See, e.g., Nat'l Housing P'ship v. Municipal Capital Appreciation Partners I, L.P.,* 935 A.2d 300, 321 & n. 63 (D.C.2007); *Randolph v. Franklin Investment, Co.,* 398 A.2d 340, 349 (D.C.1979) (en banc). Because the trial court did not conduct this analysis, and because we will not substitute our judgment for an exercise of the trial· court's discretion, we remand for consideration of this issue as well. *See Wright,* 508 A.2d at 919–20 (an appellate court should not exercise discretion belonging to a trial court).[17]

▮▮▮▮ Finally, Bolton's failure to pray for damages beyond the amount of legal

---

**17.** We find no fault, however, with the trial court's decision to grant summary judgment dismissing Bolton's counter-complaint. The three year statute of limitations had clearly passed when Bolton filed the counter-complaint. Although in some instances such a pleading could "relate back" under Super. Ct. Civ. R. 15(c), Bolton did not make a "relation back" argument in her opposition to summary judgment, nor, even with the assistance of two different counsel, did Bolton argue "relation back" when she filed the counter-complaint without leave of court, defended it against a Rule 12(b)(6) motion to dismiss (which the court denied), and attacked the grant of summary judgment here on appeal.

Unlike the Rule 8(c) and 13(f) issues, where Bolton set forth, at a minimum, the substance of the arguments upon which we remand, Bolton consistently argued with respect to the counter-complaint that the statute of limitations was no barrier because it had been tolled. She never argued that she could surmount that barrier by standing on the shoulders of the "relation back" doctrine. The trial court did not err when it failed to raise the "relation back" argument *sua sponte.*

The "relation back" doctrine is not relevant to the analysis of appellant's motion for relief under Rule 8(c); her theory is that the counterclaim was there all along, in an answer filed before the statute of limitations expired. If this argument is accepted, there is no need for the newly-acknowledged counterclaim to "relate back" to an earlier date. By contrast, appellant expressly raised a "relation back" argument in connection with her motion for relief under Rule 13(f). *See generally* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: CIVIL 3D § 1430, at 228 (3d ed. 2004) ("Once the standard set forth in Rule 13(f) is satisfied and leave of court to set up the omitted counterclaim by amendment has been granted, the remaining provisions of Rule 15 should be fully applicable and the amendment should relate back if it meets the test provided by Rule 15(c)."). Our ruling affirming the dismissal of the counter-complaint will have no preclusive ef-

fees she had already paid should be of little consequence to the trial court's Rule 8(c) and 13(f) analysis. This is because "[t]he trial court may permit recovery in an amount in excess of that prayed for by a party who seeks relief" and "in the exercise of its discretion[, it may] grant a [party] leave to amend the ad damnum even after judgment." *Otis Elevator Co. v. Tuerr*, 616 A.2d 1254, 1261 (D.C.1992) (citing *Miller v. District of Columbia*, 479 A.2d 329, 331 (D.C.1984)). In fact, in *Miller* we acknowledged that "[f]ederal courts have consistently viewed the federal rule [Rule 54(c)], which is identical to [the Superior Court] rule, as diminishing or eliminating the significance of the prayer for relief." *Miller*, 479 A.2d at 331 (internal citation omitted); *see Stineman v. Fontbonne College*, 664 F.2d 1082 (8th Cir.1981) (award of $600,000 proper although plaintiff only sought $300,000 in her complaint); *United States for Use of Bachman & Keffer Construction Co. v. H.G. Cozad Construction Co.*, 324 F.2d 617 (10th Cir.1963) (not error to allow recovery in excess of amount in prayer).

For the foregoing reasons, we affirm the judgment confirming the arbitration award. We also affirm the dismissal of Bolton's counter-complaint. See note 17, *supra*. Finally, we vacate the order denying Bolton's Motion to Amend, or in the Alternative, Clarify Her Answer, and remand for further proceedings consistent with this opinion.

*So ordered.*

fect on the trial court's consideration of the Rule 13(f) branch of appellant's motion because neither this court nor the trial court has previously considered a "relation back" argument.

We note that, if the trial court grants relief on remand under either Rule 8(c) or Rule 13(f), our ruling affirming the dismissal of the counter-complaint will have no practical effect.